## Borough of Brookhaven v. Iacobucci

*James P. Gannon,* for plaintiff.
*Henry B. Fitzpatrick, Jr.,* for defendants.

TOAL, *J.,* June 26, 1974—Plaintiff, Borough of Brookhaven, filed a complaint in equity seeking to enjoin defendants from selling certain apartment dwelling units as condominium units. Defendants have filed an answer to the complaint. The matter is now before us on defendants' motion for judgment on the pleadings or summary judgment following argument before the court en banc.

There is no substantive dispute concerning the factual situation. Defendants filed with the borough plans for the development and improvement, with apartments, of a tract of land in the borough located on Edgmont Avenue and Duttons Mill Road. The borough and defendants entered into a development agreement on November 13, 1972, permitting the construction. Initially, only paragraph 5 of the agreement was made a part of the record herein by recitation in the complaint. Defendants have constructed multiple apartment dwelling units in accordance with the building permits issued by the borough and pursuant to

plans filed and approved by the borough. However, in December 1973, defendants advertised to sell the dwelling units as condominiums. The borough contends that the units should be used as apartments and that the sale of the units as condominiums violates the provisions of section 6551(b) of borough ordinance 289 and paragraph 5 of the development agreement of November 13, 1972 between the parties.[1] No complaint is made by the borough concerning physical compliance with the approved plans, nor with the use of the multiple dwelling units constructed on the subject tract as apartments. Indeed, borough ordinance 289 established the residential apartment classification in which the subject tract is situate. Nor does the borough allege any other violation or violations of its zoning, subdivision, building, or other ordinances. The borough's action has presumably delayed or restricted sales of the completed units. We do not agree with this position taken by the borough.

Section 6551(b) of ordinance 289 provides:

"Each apartment building or group of apartment buildings, permitted on a single lot shall be designed and operated as a single management and maintenance unit, with common yards and open spaces. No site plan shall be designed so as to permit subsequent subdivision into single and two family dwellings."

---

1. Initially, only one sentence of section 6551(b) of the borough ordinance was made part of the record by recitation in the complaint. However, at the suggestion and request of the court, counsel for the respective parties have, by written stipulation, incorporated into the record ordinance no. 289 of the Borough of Brookhaven and the development agreement dated November 13, 1972.

The borough contends that the sale of the dwelling units as condominiums constitutes a "subsequent subdivision" into single- and two-family dwellings which, they argue, is prohibited by the ordinance. The borough further contends that ownership as condominiums is a step towards dividing the entire property into separate lots, thereby creating row house zoning not permitted by the borough zoning ordinance.

The borough derives its power to regulate subdivision and land development from the Pennsylvania Municipalities Planning Code of July 31, 1968, P.L. 805, art. V, sec. 501, as amended, 53 PS §10501. The term "subdivision" is defined in the Pennsylvania Municipalities Planning Code as follows:

"'Subdivision', the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, transfer of ownership or building or lot development."

Act of July 31, 1968, P.L. 805, art. 1, sec. 107, as amended by Act of June 1, 1972, P.L. 238 (no. 93), sec. 107, 53 PS §10107(21).

A review of the record and the development agreement of November 13, 1972, leaves some question as to whether or not the tract in question was actually the subject of a formal application for subdivision or whether the tract was developed without needing any subdivision. In either event, however, the legal conclusions we reach in this case are the same.

Clearly, it is the division of the land which constitutes a subdivision as distinguished from the pur-

pose for which the division is made. Here, the subject property was developed into the identical configuration of units in conformity with plans that were filed and approved by the borough. The subdivision of the tract, if any, took place at or about the time the borough approved the proposed development of the tract. In any event, regardless of whether or not there was any prior formal subdivision application, it is clear that the sale of the apartment dwelling units as condominiums would not constitute a "subdivision" within the purview or definition of the Pennsylvania Municipalities Planning Code, supra, since no division, re-division or changes in lot lines is indicated or involved relative to the tract; rather, common ownership thereof is contemplated.

In addition, since the definition of "subdivision" in the Pennsylvania Municipalities Planning Code, supra, applies, without distinction, for the purpose of leasing as well as transfer of ownership, if we were to adopt the borough's position, it would be tantamount to maintaining that the units could not be sold or leased, thereby completely precluding the developer from doing anything with the units.

Furthermore, we hold that the borough has no authority under the provisions of Pennsylvania Municipalities Planning Code, supra, relating to subdivisions and land development or relating to zoning to control the form of ownership of real property. It is the use of property rather than the form of ownership that is the proper concern of zoning and planning regulations. The contemplated change of ownership in the present case will not change the buildings on the property nor their use. See Ginter v. Borough of West Chester Zoning Hearing Board, 22 Chester 359 (1973);

Maplewood Village Tenants Association v. Maplewood Village, 116 N.J. Super. 372, 282 A. 2d 428 (1971); Bridge Park Co. v. Borough of Highland Park, 113 N.J. Super. 219, 273 A. 2d 397 (1971). Though we have found no Pennsylvania appellate decisions on point, we are persuaded by the reasoning of the above cases.

Moreover, a reasonable interpretation of the ordinance, consistent with the law of the Commonwealth, indicates that it does not prevent condominiums.

The latter provisions of section 6551(b) of the ordinance prohibit any *site plan design* which would permit "subsequent subdivision" into single- and two-family dwellings. In the instant case, the site plan is not in issue and a substantial question is raised, in the opinion of the court, as to whether "subsequent subdivision" is a justiciable issue in the absence of an issue concerning the site plan.[2]

The use of the property will be identical to that approved by the borough and will be consistent with the residential apartment classification created by the ordinance. The word "apartment" should be interpreted in its broadest sense in favor of the landowner since zoning ordinances, being in derogation of the common law, must be strictly construed. See, inter alia: Fidler v. Zoning Board of Adjustment, 408 Pa. 260 (1962); Phi Lambda Theta Zoning Case, 400 Pa. 60 (1960), and cases therein cited. An apartment is defined as: "A room or set of rooms fitted esp. with housekeeping facilities and used as a dwelling" or "a building

---

2. If we held the latter part of section 6551(b) of the ordinance to prohibit condominium sales, which we do not, we would feel constrained to declare the ordinance unconstitutional. See Girsh Appeal, 437 Pa. 237 (1970).

made up of individual dwelling units": Webster's New Collegiate Dictionary, Eighth Edition, at page 52. Ownership by either the occupant or another is not pertinent to the definition. There is nothing in the ordinance classification permitting "An apartment house or group apartment development" to require the apartment occupant to have a leasehold interest instead of an ownership interest in a condominium.

Condominium ownership will change little except the relationship between the occupants and the property they occupy and use. In accordance with the Unit Property Act of July 3, 1963, P.L. 196, 68 PS §700.101, the complex will continue to be managed as a unit with, however, a council of owners supplanting the developer. We find this to be consistent with the legitimate concerns and expectancies of the borough and to comply with section 6551(b) of the ordinance requiring each apartment building or group of apartment buildings to be operated as a single management and maintenance unit with common yards and open spaces.

The specter raised by the borough of "row house zoning" by a possible revocation of declaration of condominium by all the owners, together with a mutual exchange of deeds and releases, is not before the court. Whether or not such action will be governed by the zoning or subdivision ordinances is a question for the future, if it ever arises.

Paragraph 5 of the development agreement provides as follows:

"The Developer agrees to be bound by the terms of this Agreement, however, the parties agree that the Developer may assign his rights under this

agreement to a nominee or assignee and that title may be delivered to said nominee or assignee, but it is agreed that the Developer shall be a principal party of such nominee or assignee and that the Developer shall provide for said nominee and/or assignee to be bound by the terms of this Agreement, since it is the intention of not only the Borough but also the Developer that Developer be the party to improve and build upon the tract and the title owner of the pertinent real estate shall, at all times, be bound by the terms of this Agreement."

The language reveals an intention to assure that the developer would, in fact, do the developing of the tract, and that any post-development owners would be bound by the terms of the agreement. The parties have provided us with specific expression of their intention ". . . that the Developer be the party to improve and build . . . and the title owner . . . shall . . . be bound by the terms of Agreement." When this is read in conjunction with the preceding language in the paragraph, any apparent ambiguities are cleared up. For example, developer's "rights" under the agreement may be assigned to a nominee or assignee. The "rights" referred to are to construct in accordance with the plans. Thus, assignment of "rights" to a nominee or assignee of which developer is to be a principal party contemplates that the assignment will take place during construction, not afterward. If it is the intention that developer be the party to "improve and build," there is no need to restrict developer's right of alienation after completion of construction. The further protection required by the borough is provided by the assurance that developer will require that any successor in title be bound by the "terms," i.e., the

obligations as well as rights, of the agreement.[3] It is not intended that developer's right of alienation be restricted after construction is completed. We do not find that the agreement intended to bind forever the developer to the ownership of the property.

The court is not unmindful of the authorities which hold that motions of the type here presented on behalf of defendants can only be granted in clear cases. Here, however, a clear case is presented within the intendment of these authorities.

Accordingly, we enter the following

## ORDER

And now, June 26, 1974, it is ordered and decreed that defendants' motion for judgment on the pleadings or summary judgment be and the same is hereby granted; plaintiff's complaint in equity seeking to enjoin the sale of defendants' apartment units as condominium units is dismissed.

---

3. Subsequent to the time of argument and shortly before the filing of this opinion, the borough filed a rule and petition for rehearing alleging therein, in substance, that the defendants have sold certain units as condominium units, that the condominium documents filed of record do not specify the duties of the condominium association vis-a-vis the Borough of Brookhaven, and that the borough will suffer irreparable damage. The issues raised by the petition are neither material nor relevant to the issues before the court for determination on defendants' motion and should not delay the disposition thereof. Moreover, the technical propriety of this pleading, at this juncture in the proceeding, is most questionable. Defendants have filed preliminary objections to the petition. However, this opinion and order are without prejudice to the rights of the borough to have the issues raised adjudicated in an independent proceeding.