116 N.J. Super. 372 (1971)
282 A.2d 428
MAPLEWOOD VILLAGE TENANTS ASSOCIATION, A NONPROFIT CORPORATION, PLAINTIFF,
v.
MAPLEWOOD VILLAGE, A PARTNERSHIP; STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF LAW, BUREAU OF SECURITIES, AND THE TOWNSHIP OF MAPLEWOOD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 22, 1971.
*373 Mr. S. Arthur Stern for plaintiff.
Mr. Fred R. Gruen for Maplewood Village (Messrs. Gruen & Goldstein, attorneys).
*374 Mr. Douglas J. Harper for State of New Jersey, (Mr. George F. Kugler, Jr., Attorney General, attorney).
Mr. Mortimer Katz for Township of Maplewood.
BYRNE, J.S.C.
The court is called upon to decide the following issues:
(1) Where there is an offer to sell an apartment unit to an existing tenant as part of a process of converting an apartment house into a condominium, does this offer to sell constitute sufficient basis to bring into play existing New Jersey warranty law and does it further justify extensive use of pretrial discovery by the prospective tenant-purchaser by reason of the relationship created by the offer to sell, perhaps coupled with the existing landlord-tenant relationship?
(2) Is a proposed conversion of an apartment house which is owned by a partnership into a condominium a subdivision requiring approval as such by the appropriate local government agency?
(3) Does the conversion as described constitute a sale of securities within the meaning of N.J.S.A. 49:3-27 and/or 49:3-49?
There are other points raised, none of which the court regards as presently critical, e.g., a question involving the rule against perpetuities, which defendant represents it will avoid by changing the offering slightly. That portion of the complaint which seeks the appointment of a rent receiver is sufficiently controverted so that summary relief is not appropriate.
The case arises out of a simple factual situation. Defendant is a partnership that owns an apartment house and proposes to convert the apartment dwelling into a condominium, offering each tenant an option to purchase his own apartment prior to a general offering to the public. Plaintiff is an association, in corporate form, of tenants formed primarily to raise the issues considered in this case.
*375 Plaintiff's first point is, on its face, remarkably simple. It states that since a sale of an apartment unit is contemplated and since that sale would be accompanied by various warranties, the breach of which would give rise to a cause of action, it is entirely appropriate to have pre-sale discovery as to any defects in the item warranted, either expressly or impliedly.
Defendant's response is equally simple. It says, first, that it makes no warranty, that the apartments are being offered as is; and, second, that plaintiffs are merely prospective purchasers and are not clothed with the standing requisite to test the warranties, and, in any event, it has made representations as to the condition of the premises sufficient to allow purchasers to make an intelligent decision. Defendant further points to a local ordinance requiring an inspection of each apartment by the local housing inspector for defects upon a change in occupancy of multiple-dwelling apartment units, and a requirement that it cure any defects that may be found.
Both parties admit that the wealth of New Jersey law dealing with warranties, expressed or implied, and the standing to take advantage of them do not quite reach the present factual situation, Marini v. Ireland, 56 N.J. 130 (1970); Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969); Berzito v. Gambino, 114 N.J. Super. 124 (Cty. D. Ct. 1971); Academy Spires, Inc. v. Brown, 111 N.J. Super. 477 (Cty. D. Ct. 1970), nor do the cases along the line of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960).
Plaintiff describes itself as more than merely a group of prospective purchasers, but rather purchasers coupled with an interest, i.e.., an existing leasehold and an option to purchase. The question is whether, under these circumstances, a court should make warranty concepts contained in our law prospective in operation. There are policy arguments against it. An offer is made to a prospective purchaser, who proceeds to make extended inquiry and inspection. The period of inquiry extends beyond the time of expiration *376 of the offer and court aid is sought by the prospective purchaser to extend the offer until he can satisfy himself as to expressed and implied warranty status. An offer is made to more than one purchaser, or to a group of purchasers, each of whom wants to make his own independent inquiry. An offer is withdrawn after a purchaser has gone to great trouble and expense in making the inquiry described. Here the proposed inquiries cover the broadest range and include inquiry as to financial statements, accounting methods, profit and loss, etc.
The warranty sections of the Uniform Commercial Code, N.J.S.A. 12A:2-312 to 318, seek to protect the ordinary purchaser from being defrauded. The gist of these remedies is to protect the actual purchaser. The nature and extent of the warranties are subject to negotiation between purchaser and seller. The right of inspection can be part of those negotiations. Under some circumstances an offering to the general public is regulated in regard to type and sufficiency of disclosure. Where such disclosure is required by law as part of an offering, it serves as protection to a buyer. To give an interested possible purchaser the extent of pre-purchase discovery here sought would, in effect, be to require either formal or court-aided action in the furnishing of a prospectus to virtually every prospective purchaser. In theory, if not in practice, the housewife would be able to submit interrogatories to the manager of her favorite grocery store prior to purchasing a dozen eggs. That policy, enunicated by the courts but not yet by the Legislature, might do more to frustrate rather than open avenues of commerce, even assuming that the direction of those avenues is toward honest dealing between seller and purchaser. It would be a burden on the market place of a kind we have not yet seen cause to impose under existing law.
The purchasers do not have the right of discovery prior to their decision as to whether to exercise a right to purchase their particular apartment. This view is reinforced by a consideration of the extent of disclosure sought, to wit: *377 list the purchase price of each unit; what is the present occupancy rate and that for the past two years; give the assessed valuation for the years 1967 through 1970 for Maplewood Village; describe the surrounding neighborhood, its growth and changing phases; submit any other instruments relating to debt of the seller incurred or intended to be incurred, whether short or long term.
As to a requirement that defendant seek subdivision approval by Maplewood Township, the township zoning ordinance makes no reference to subdivision approval for the conversion of existing apartments into condominiums. It has been correctly asserted by the township that such an ordinance would be invalid in view of N.J.S.A. 46:8B-29 which has preempted this area. The statute states, in part, that:
All laws, ordinances and regulations concerning planning, subdivision or zoning shall be construed and applied with reference to the nature and use of the condominium without regard to the form of ownership.
The presently existing apartments conform to the township zoning ordinance, and the proposed conversion represents nothing more than a change in the form of ownership. The use of the land will not be affected. Planning controls, including subdivision approval, cannot be employed by a municipality to exclude condominiums or discriminate against the condominium form of ownership, for it is use rather than form of ownership that is the proper concern and focus of zoning and planning regulation. The township does not contend otherwise. A municipality may impose subdivision controls upon a condominium apartment under the Municipal Planning Act (1953) only if it imposes the same controls on conventional landlord-owned apartment buildings.
In Bridge Park Co. v. Highland Park, 113 N.J. Super. 219 (App. Div. 1971), a substantially similar question was *378 raised. There the owner of a garden apartment proposed a conversion to a condominium form of ownership but was informed that such did not conform to the town's zoning ordinance which permitted garden-type apartments under single ownership. The Appellate Division pointed out that while N.J.S.A. 40:55-30 allows municipalities to regulate the use or type of construction on real property, it does not grant power to regulate the ownership or types of tenancies permitted. Further, the court stated that "the word `use,' as contained in the statute above [N.J.S.A. 40:55-30], does not refer to ownership but to physical use of lands and buildings. A building is not `used' as a condominium for purposes of zoning."
Therefore, the request that defendant be required to obtain subdivision approval must be denied since it is based on form of ownership rather than use.
Also at issue in this case is whether the proposed condominium sale should be regulated by the State of New Jersey, through the Department of Law and Public Safety, Bureau of Securities. Plaintiff contends that defendant is bound to comply with the filing and registration requirements embodied in the Real Estate Syndication Offerings Law, N.J.S.A. 49:3-27 et seq. and/or the Uniform Securities Law (1967), N.J.S.A. 49:3-47 et seq. However, an examination of these statutes will show that this proposed condominium conversion plan cannot be held to constitute a "security" cognizable within either of the securities acts. Both acts are intended to afford some protection to the public when making an investment in a security, with the first of the two acts aimed specifically at real estate securities.
To date there have not been any New Jersey decisions dealing specifically with the question of what constitutes a security within the definition found in N.J.S.A. 49:3-49 (m). Other jurisdictions generally require a finding of two basic elements prior to the finding of the existence of a security, viz., use of the investment by another and a profit motive. A few states, such as New York, require *379 compliance with local securities regulation, but the New York condominium statute, Real Property Law, McKinney's Consol Laws, c. 50, § 339(d) et seq., states in § 339(ee) that condominiums "shall be deemed to be cooperative interests in realty within the meaning of section three hundred fifty-two-e of the general business law. [Real Estate Syndication Offerings Law]." It should be noted that the New York law preceded its New Jersey counterpart for which served as model, and the New Jersey act conspicuously does not include such a directive. Another finding which sheds some light upon the Legislature's intent is the fact that when it enacted the Retirement Community Full Disclosure Act, N.J.S.A. 45:22A-1 et seq., it specifically mandated security-type regulations for "senior citizen" condominiums, requiring registration and offering statements. This further emphasizes the absence of any such legislative directive in the two acts here concerned, as regards regular (non-"senior citizen") condominiums.
Similarly, defendant's proposed conversion does not constitute a "real estate security" within the meaning of N.J.S.A. 49:3-27. The "offering statement" or "prospectus" required by this act is aimed principally at income-generating types of securities to be purchased as investments, and not merely to the purchase of real property for residential purposes. To place the purchase of an apartment, made for the purpose of serving as a personal residence, within the coverage of the act would be illogical. The reasoning is that there is no entrusting of investment capital to a third party for the purpose of management or investment thereof, for the purpose of income generation or capital gain. When purchasing a condominium the buyer is afforded personal control of his investment, as opposed to the securities investor whose investment may be controlled by third parties, e.g., corporate officers. Finally, it was stated in Contract Buyers League v. F. & F. Investment, 300 F. Supp. 210 (N.D. Ill. 1969) that:
*380 To conclude that the natural desire of any purchaser that his purchase should appreciate in value makes a "security" of what has been purchased, is obviously to so muddle the term as to make it meaningless. [at 224]
It does not, therefore, appear to have been the intent of the Legislature that condominiums be regarded as securities within the scope of the Real Estate Syndication Offerings Law or the Uniform Securities Law (1967). The Attorney General in his brief does not contend otherwise.
In light of the disposition made of these issues, there is no basis for ordering or continuing any restraints in this matter. It is noted that counsel have, by consent, extended certain time limitations which the court assumes will prevail, and except to that extent, the interim relief sought is denied.