281 S.E.2d 418 (1981)
GRAHAM COURT ASSOCIATES, a partnership, consisting of Brian L. South, Kenneth G. Browder, and Katherine Harkey,
v.
TOWN COUNCIL OF the TOWN OF CHAPEL HILL, Marilyn Boulton, Joseph Herzenberg, Jonathan Howes, Mayor Pro Tem, Beverly Kawalec, R. D. Smith, Joseph Straley, Bill Thorpe, James C. Wallace, Town of Chapel Hill, and Mayor Joseph L. Nassif.
No. 8015SC1039.
Court of Appeals of North Carolina.
September 1, 1981.
Turner, Enochs, Foster, Sparrow & Burnley by James H. Burnley, IV, Wendell H. Ott, Greensboro, for petitioner-appellee.
Haywood, Denny & Miller by Emery B. Denny, Jr., and Michael W. Patrick, Chapel Hill, for respondents-appellants.
*419 MORRIS, Chief Judge.
Respondents contend that the issue before this Court is whether municipalities are authorized under the General Statutes to regulate the creation of condominiums and whether the petitioner's property was exempt from the special use provision of the zoning ordinance. Petitioner contends that the only issue before this Court is whether the power to control the uses of property through zoning extends to control of the manner in which the property is owned. We agree with petitioner with respect to the issue before us and affirm the trial court.
The trial court, without objection, found as facts the following:
5. The petitioner plaintiff at all times relevant to this petition and claim for relief has been and is the owner of the real property to which this cause relates, said property being located within the boundaries of the town of Chapel Hill and being more particularly described by that Deed recorded in Book 312, Page 13, in the Office of the Orange County, North Carolina, Register of Deeds, said property being hereinafter referred to as "Graham Court".
6. Graham Court consists of a lot of approximately forty-four thousand square feet upon which two separate buildings exist, each of which contains twelve two-bedroom residential apartment units.
7. The Graham Court Apartments were constructed approximately fifty years ago and have been continuously owned and operated since initial construction as a twenty-four unit multi-family residential apartment complex.
8. Subsequent to initial construction of the Graham Court Apartments, the Town of Chapel Hill adopted zoning laws and regulations and provisions for the administration and enforcement of same, restricting and regulating permissible uses of all property within the Town's zoning authority.
9. The Graham Court property is and has been at all times relevant to this cause located within districts designated by Town of Chapel Hill zoning ordinances as "R-4" and "R-10".
10. The Town of Chapel Hill zoning ordinance recognizes multi-family residential property to be a permissible use in the R-4 and R-10 zoning districts in accordance with standards specified therein.
11. The Graham Court property does not fully comply with the Town of Chapel Hill zoning ordinance standards currently applicable to multi-family dwellings within R-4 and R-10 zoning districts in that the side yards of the Graham Court property are six feet wide, whereas currently applicable zoning standards require thirty-six parking spaces; and the number of apartment units on the property exceeds the number of units permissible.
12. Continued use of the Graham Court property as multi-family housing is permitted as a prior nonconforming use under the ordinance providing for the zoning of Chapel Hill.
13. Petitioner plaintiff contemplates selling the Graham Court property to new owners pursuant to and in accordance with the terms of the North Carolina Unit Ownership Act, N.C.G.S. Sec. 47A-1 et seq.

14. The Town of Chapel Hill, by its Town Council, asserts authority to regulate the contemplated change of ownership of Graham Court by requiring application for and issuance of a special use permit as a prerequisite of such a change.
15. In the face of the assertion by the Town of Chapel Hill of a special use permit requirement, the petitioner plaintiff applied for such a permit on or about October 5, 1979.
16. On or about December 12, 1979, the application of petitioner plaintiff for a special use permit was considered by the Chapel Hill Town Council at a public hearing.
17. On or about February 11, 1980, the Town Council, by a vote of seven to one, denied issuance of the special use permit applied for by petitioner plaintiff.
*420 This case presents a case of first impression in North Carolina, although other jurisdictions have dealt with the question. Basic to the decisions in other jurisdictions is the premise that zoning is the regulation by a municipality of the use of land within that municipality, and of the buildings and structures thereon  not regulation of the ownership of the land or structures. See 1 Rathkopf, The Law of Zoning and Planning, § 1.01 (4th ed. 1981); 82 Am.Jur.2d, Zoning and Planning, §§ 5 and 13; Blades v. City of Raleigh, 280 N.C. 531, 546, 187 S.E.2d 35, 43 (1972), (wherein Justice Lake said: "The whole concept of zoning implies a restriction upon the owner's right to use a specific tract for a use profitable to him but detrimental to the value of other properties in the area, thus promoting the most appropriate use of land throughout the municipality, considered as a whole." (emphasis added)); O'Connor v. City of Moscow, 69 Idaho 37, 43, 202 P.2d 401, 404 (1949), (where the Court said: "A zoning ordinance deals basically with the use, not ownership, of property."); Elizabeth City v. Aydlett, 201 N.C. 602, 161 S.E. 78 (1931); 1 Rathkopf, The Law of Zoning and Planning, § 1.04 (4th ed. 1981).
In the case before us, the court found as facts, and no one argues otherwise, that the Graham Court Apartments property does not comply with the zoning ordinance requirements for multi-family housing and that its continued use as multi-family housing is permitted as a prior nonconforming use under the ordinance providing for the zoning of Chapel Hill. We must decide whether the contemplated change in ownership to condominiums constitutes a change in use which the town can regulate by its zoning ordinance. We answer that it does not. Again, "The test [of nonconforming use] is `use' and not ownership or tenancy." Arkam Machine & Tool Co. v. Lyndhurst Tp., 73 N.J.Super. 528, 533, 180 A.2d 348, 350 (App.Div.1962).
In O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401 (1949), the zoning ordinance adopted in 1947 which prohibited the opening or operation of any new or additional place of business in a prescribed area in which any pool, billiard, card, or dice game is played or in which beer or liquor is sold also provided that any change of ownership of an existing business of that type should be deemed a new or additional business. Prior to the adoption of the ordinance respondents owned land and the building thereon within the prescribed area and in which they conducted a combined pool hall, card room, and retail beer parlor. After the enactment of the ordinance, the respondents wanted to sell their business and lease the premises to a purchaser of the business who would continue to operate the business therein. Because of the ordinance, the prospective purchaser refused to exercise his option. Respondents brought suit for a declaratory judgment to have the provision adjudged void. The ordinance permitted the continuation of nonconforming uses. The Court, in holding for respondents, said:
The effect of the provision of the ordinance here complained of is to deprive respondents of their property by preventing the sale of their business and restricting their leasing of the real property for use in connection therewith.
A zoning ordinance deals basically with the use, not ownership, of property. The provision in question declaring a change in ownership to be a new business is an arbitrary and unreasonable exercise of the police power and violates the constitutional protection given by the due process clauses.
69 Idaho at 43, 201 P.2d at 404.
In its judgment, the Court cited several cases from other jurisdictions in accord with the result reached. Bridge Park Co. v. Borough of Highland Park, 113 N.J.Super. 219, 273 A.2d 397 (1971); Maplewood Vil. Ten. Assn. v. Maplewood Vil., 116 N.J.Super. 372, 282 A.2d 428 (1971); Beers v. Bd. of Adjust. of Wayne Tp., 75 N.J.Super. 305, 183 A.2d 130 (1962); City of Miami Beach v. Arlen King Cole Con. Ass'n., Inc., (Fla.App.) 302 So.2d 777 (1974), cert. denied, 308 So.2d 118 (1975); and Wentworth Hotel Inc. v. Town of New Castle, 112 N.H. 21, 287 A.2d 615 (1972).
*421 In Beers, plaintiff had owned a corner tract of land on which five houses were situated since 1955. The bungalow type dwellings were erected prior to 1930, before the zoning ordinance in question was enacted, and had been rented to tenants. Plaintiff sold these dwellings to their tenant-occupants on installment contracts, but when he delivered a deed to one of them, he was told that it was a subdivision and had to be approved by the Planning Board. The Planning Board refused approval on the ground that it did not meet the current zoning requirements. Through various appeals, the matter reached the appellate division, and the court held that plaintiff was legally free to make separate conveyances to vendees of the dwellings without regard for the action of the planning board. It was obvious that the houses were in a pocket surrounded by a river and industrial areas. Without question, as a subdivision, it would not comply with the zoning ordinance. The defendants conceded that the buildings were valid nonconforming uses and entitled to the status accorded such use by the ordinance. The Court noted:
Defendants do not even suggest, nor do we believe they properly could, that owner-occupation of a dwelling is a different use of the property in a zoning sense from tenant-occupation, the actual occupancy of the residence in either case being by a single family ... The defendants' attitude towards plaintiff's program is seen actually to come down in essence to dictation of combined as against separate ownership of the dwellings. As indicated, we do not regard a mere change from tenant occupancy to owner occupancy as an extension or alteration of the previous non-conforming use of the dwellings. And there is no question as to the right of alienability of property along with its attendant valid non-conforming use.
75 N.J.Super. at 316-17, 183 A.2d at 136-37.
In Bridge Park Co., supra, plaintiff, a partnership, owned an apartment building containing eleven garden apartments, each consisting of six rooms and a bath. Plaintiff had owned the apartments since their construction in 1961. In 1969, plaintiff proposed to sell the apartments under a statute contemplating the ownership of apartments outright by the tenants and common ownership of the "general common elements" of the apartment premises. Before any sales were completed, plaintiff was notified that the declaration he had executed would violate the zoning ordinance which defined garden apartments as "a building or series of buildings under single ownership ..." Plaintiff sought a declaratory judgment. In concluding that the attempted regulation of ownership of property under the guise of the zoning power is beyond the power of the municipality, the Court said:
Defendant attempts to characterize condominium ownership as a "use" of land  i.e., since the property in question is to be "used" as a condominium, the municipality may regulate or prohibit such "use". It is apparent, however, that after change of ownership as planned, the same buildings will be on the premises in question and the use to which they are put will also remain the same. We conclude that the word "use", as contained in the statute above, does not refer to ownership but to physical use of lands and buildings. A building is not "used" as a condominium for purposes of zoning.
113 N.J.Super. at 222, 273 A.2d at 398-99.
In Maplewood Village Tenants Association, plaintiff was an association of tenant prospective purchasers of units in an apartment building being converted into condominium ownership and sought answers to certain questions involved in the conversion. One of the questions raised was whether approval of the municipality was required. The zoning ordinance made no reference to subdivision approval for the conversion of existing apartments into condominiums. The Court noted that N.J.S.A. 46:8B-29 had preempted this area. The statute provided that zoning ordinances should be construed and applied "with reference to the nature and use of the condominium without regard *422 to the form of ownership."[1] In holding that no subdivision approval was required, the Court said:
The presently existing apartments conform to the township zoning ordinance, and the proposed conversion represents nothing more than a change in the form of ownership. The use of the land will not be affected.
116 N.J.Super. 377, 282 A.2d at 431. The Court cited with approval and discussed Bridge Park Co.
Another case on which the trial court relied is City of Miami Beach v. Arlen King Cole Con. Ass'n., Inc., supra, a case on "all fours" with the one before us. In 1961, the King Cole Apartments were constructed and were in compliance with the existing zoning ordinance with respect to off-street parking spaces. In 1971, the city amended its zoning ordinance and increased the number of off-street parking spaces that would be required for an apartment building such as the King Cole Apartments, so that the King Cole Apartments became a nonconforming use. In 1974, the owners of the King Cole Apartments filed a "declaration of condominium" for the purpose of converting the apartments into a condominium. The city brought a suit to prevent the conversion because there would not be sufficient off-street parking as required by the 1971 ordinance. The trial judge held that the use had not been changed and the owners were not required to meet the off-street parking requirements of the 1971 ordinance. The city contended that if a new structure were being erected, the 1971 ordinance would have to be met and took the position that the conversion really constituted a new structure. In affirming the trial judge, the Court of Appeals said:
A nonconforming use relates to the property and not to the type of ownership of the property. Beers v. Board of Adjustment of Township of Wayne, 75 N.J.Super. 305, 183 A.2d 130; Bridge Park Co. v. Borough of Highland Park, 113 N.J.Super. 219, 273 A.2d 397; Maplewood Village Tenants Ass'n v. Maplewood Village, 116 N.J.Super. 372, 282 A.2d 428. Changing the type of ownership of real estate upon which a nonconforming use is located will not destroy a valid existing nonconforming use. This is the only significant change in the real property and improvements involved in the instant litigation. Such structural changes as the owners determine to make in the hotel-apartment to convert to condominiums were minor in nature and not of a structural quality. Therefore, there was no abandonment of the nonconforming use under the zoning ordinances of the City of Miami Beach.
302 So.2d at 779.
In Wentworth Hotel, Inc., supra, the Supreme Court of New Hampshire held that the owners of a hotel could replace a burned wing of a nonconforming commercial hotel with a 104 unit condominium even though the area was zoned for one and two family residences.
We think the cases from these jurisdictions are well reasoned and answer the question posed. We, therefore, follow their reasoning and hold that the petitioner here is not required to apply for or receive a special use permit in order to convert its tenant occupied apartments to owner occupied apartments.
Without question petitioner has the right to continue the present use of the Graham Court Apartments as they stand, because they constitute nonconforming uses. The only real difference in the contemplated change is ownership. If the town should prevail, the apartments would be relegated, now and for the future, to occupancy by tenants. The conversion which petitioner seeks would permit them to be owned by their occupants. There would be absolutely no change in the use of the land. If a use is permitted, as here, it is beyond the power of the municipality to *423 regulate the manner of ownership of the legal estate. Kaufman & Board v. W. Whiteland Sup., 20 Pa.Cmwlth., 116, 340 A.2d 909 (1975); Dublin Properties v. Upper Dublin Twp., 21 Pa.Cmwlth. 54, 342 A.2d 821 (1975); see generally 1 Rathkopf, The Law of Zoning and Planning, § 1.04 (4 ed. 1981). Bridge Park Co. v. Borough of Highland Park, supra, followed in Maplewood Tenants Ass'n v. Maplewood Village, supra.
Holding, as we do, that the Town of Chapel Hill lacked the right or legal authority to require petitioner to apply for or receive a special use permit as a prerequisite to its right to sell the Graham Court Apartments in any legally recognized format, including the right to sell part or all of the property as condominiums, we do not discuss the question raised by respondents with respect to whether the property, on the special facts of this case, is exempt from the special use provisions of the ordinance.
The judgment of the trial court is
Affirmed.
HARRY C. MARTIN and HILL, JJ., concur.
NOTES
[1] Beers was decided in 1962 and the statute was enacted in 1969. Bridge Park Co. does not refer to the statute.