**Carolyn Smart KEITH**

v.

**SACO RIVER CORRIDOR
COMMISSION.**

Supreme Judicial Court of Maine.

Argued March 8, 1983.

Decided Aug. 3, 1983.

Smith & Elliott, Roger S. Elliott (orally), Karen B. Lovell, Saco, for plaintiff.

Hugh Calkins, Dover-Foxcroft (orally), for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, CARTER * and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendant-appellant, Saco River Corridor Commission (the Commission), appeals from the order of the Superior Court, York County, granting summary judgment to the plaintiff-appellee, Carolyn Smart Keith, in her appeal from a Commission decision denying Keith's request for a determination by the Commission that the premises located at 520–524 Ferry Road, in the City of Saco, were grandfathered and as such were not subject to the requirements of 38 M.R.S.A. § 957–B.3.E(3) and (5), or, in the alternative, for the grant of a variance from the requirements of the Act.[1] The Superior

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. The Saco River Corridor Act, 38 M.R.S.A. §§ 951–968, provides as follows:

§ 957–B. *Limited Residential District*

3. *Uses allowed by permit.* Uses within the Limited Residential District which may be allowed by permit shall include:

E. Single family residences and accessory structures meeting all of the following performance standards:

(3) The combined river frontage and setback of any building shall be not less than 500 feet;

Court found that the property in question had been "functionally divided" as separate lots by tenant occupation since before the enactment of the Act and concluded that, as such, the premises were lawful existing nonconforming uses under 38 M.R.S.A. § 958 and that the proposed shift from tenant-occupation to owner-occupation of the delineated lots did not constitute an extension, expansion or enlargement of the existing nonconforming use so as to defeat the grandfathered status of the property. The Superior Court did not reach the issue respecting Keith's entitlement vel non to a variance. We agree with the Superior Court's decision and affirm the judgment below.

### Facts

Carolyn Smart Keith is the owner of land on the Ferry Road in Saco which she purchased in the early 1950's as one lot. From that time to the present, the structures thereon, together with appropriate curtilage, were separately occupied and used by tenants. The plot contained a duplex residence, and two detached single-family houses with garage, each dwelling being served by its own utility and sewage disposal system. The parties concede that the three dwelling houses and other structures on the land were lawful as such and in their use on March 19, 1974,[2] and thus, if the land remains undivided, "may continue although such use of structure does not conform to this chapter," etc. 38 M.R.S.A. § 958.

Keith proposes to divide the land into four separate lots with fixed delineated boundaries; each one of the three lots closest to the Ferry Road will have one of the dwelling-houses thereon. These three lots, she proposes to sell, while the fourth lot

situated in the rear and vacant, she would keep for herself. Situated on their separate smaller lots which Keith proposes to sell, none of the dwellings would conform to the aggregate frontage and setback requirements of the Act, nor would they ever be able to conform in the future; the vacant lot could be built on without problem.

Faced with this situation, Keith sought from the Commission a determination that her proposed division and sale of the three separate lots and buildings thereon were not subject to the restrictions of the Act on the ground that, prior to the enactment of the Act and continuously thereafter, the three lots were treated as functionally divided and used as such under separate tenanted occupancies. As alternative relief, Keith requested variances under the Act which would permit the project to go through. The Commission rejected Keith's contention that her land was exempt from the strictures of the Act and denied her relief by way of granting her the variances she was requesting. On appeal, the Superior Court reviewed the administrative record before the Commission, the pleadings and argument of counsel, which resulted in a decision in favor of the plaintiff-appellee on her contention that the strictures of the Act did not apply to her nonconforming property.

The issue raised by the Commission's appeal is, whether the mere change from tenant occupancy of the three separate lots to owner occupancy under Keith's lot division and sale proposal would be an extension, expansion or enlargement of existing buildings, structures or of nonconforming uses

(5) Where there is an accepted road or public right of way, as of March 19, 1974, within 500 feet of the normal or mean high water mark of the river with different land ownership on either side of the road or public right of way, the landowner on the far side of the road or public right of way from the river shall have an aggregate of setback from the river and frontage on the far side of the road or public right of way equal to 500 feet.

2. The Saco River Corridor, enacted in 1979, c. 459, § 1, effective September 14, 1979, was a re-enactment of previous private and special legislation which became effective originally October 3, 1973. (See P & SL 1973, c. 150, as amended by P & SL 1973, c. 208, and by PL 1977, c. 276).

prohibited by 38 M.R.S.A. § 958 except on permit from the Commission.[3]

*Preliminary considerations*

▮ Initially, we note that the Superior Court justice, in deciding the motion for summary judgment, did not take or receive any additional evidence, but made his decision entirely from the record developed before the Commission. Under such circumstances, we review the administrative record directly, the same as the Superior Court did, and determine whether the Commission abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982). *See Thornton v. Lothridge,* 447 A.2d 473 (Me.1982). Here, we say that the Commission committed error of law when it ruled against the plaintiff-appellee's contention. The proposed division and sale of the three functionally divided nonconforming lots and buildings thereon continuously rented to tenants as separate lots for dwelling purposes was not prohibited by the Act and the plaintiff-appellee did not have to satisfy the legal standards for variances from the frontage and setback requirements of the

Act before she could obtain Commission approval of the proposed division and sale of the lots. The Commission ruling to the contrary was based largely on the stated reason that

"Division of the parcel as proposed would eliminate any future possibilities for conformance to the requirements of the Act."

Having ruled that it had authority to approve or disapprove Keith's project *only* on the basis of variances legally allowable from the setback and frontage requirements of the Act, the Commission denied the relief sought by the plaintiff-appellee. We do not reach the variance issue on this appeal.

We further note that the Saco River Corridor legislation was expressly stated to be a comprehensive chart regulating the *use* of land and water in the area of the so-called Corridor.[4] Although one of the purposes of the Act is said to be—to prevent overcrowding—nowhere in the Act is the Commission given express authority to regulate subdivisions of land as such. As a matter of fact, the Act contemplates full compliance with

---

**3.** 38 M.R.S.A. § 958 provides in pertinent part as follows:

§ 958. *Existing uses*

Any existing building or structure or use of building or structure lawful March 19, 1974, or of any subsequent amendment of this chapter or of any regulation adopted hereunder, may continue although such use of structure does not conform to this chapter or the regulations adopted hereunder. Any existing building or structure may be repaired, maintained and improved, *but an existing building, structure or nonconforming use may be extended, expanded or enlarged only by permit from the commission.* A nonconforming use, other than a single family residential use, which is discontinued for any reason for a period of one year shall be deemed abandoned and may not be resumed thereafter except on compliance with the requirements of this chapter.

If, as a result of flood, fire or other casualty, the value of a nonconforming building or structure is reduced by more than 75%, it may be rebuilt and the nonconforming use housed therein may be continued only by permit from the commission. If a nonconforming building or structure is decreased in value less than 75% by flood, fire or other casualty, it may be

rebuilt in substantially the same location and in the same size without a permit from the commission, even though it would otherwise violate the requirements of this chapter, provided that the rebuilding shall be commenced within 12 months of the casualty. (Emphasis supplied).

**4.** The purposes as listed in 38 M.R.S.A. § 951 are enumerated as follows:

In view of the dangers of intensive and poorly planned development, it is the purpose of this chapter to preserve existing water quality, prevent the diminution of water supplies, to control erosion, to protect fish and wildlife populations, to prevent undue extremes of flood and drought, to limit the loss of life and damage to property from periodic floods; to preserve the scenic, rural and unspoiled character of the lands adjacent to these rivers; to prevent obstructions to navigation; to prevent overcrowding; to avoid the mixture of incompatible uses; to protect those areas of exceptional scenic, historic, archaeological, scientific and educational importance; and to protect the public health, safety and general welfare by establishing the Saco River Corridor and by regulating the *use* of land and water within this area. (Emphasis added).

all federal, state and municipal regulations. See 38 M.R.S.A. §§ 959 and 961. The parties agree that the instant proposed division was not subject to control by the Board of Environmental Protection which is given authority over large subdivisions of land in excess of 20 acres. Also, the Planning Board of the City of Saco has determined that Keith's proposed division of land is exempt from subdivision review under the provisions of 30 M.R.S.A. § 4956.

■ True, as relied on by the Commission, the policy of zoning is to gradually or eventually eliminate nonconforming uses as speedily as justice will permit. *Inhabitants of Town of Windham v. Sprague,* 219 A.2d 548, 552–53 (Me.1966); *Vermont Brick v. Village of Essex Junction,* 135 Vt. 481, 380 A.2d 67, 69 (1977); *Taylor v. Metropolitan Development Commission,* 436 N.E.2d 1157, 1159 (Ind.App.1982). But the implementation of this goal must be carried out within legislative intendment. Here, the Act does not contemplate complete adherence to such objective, since the Act expressly authorizes the repair, maintenance and improvement of existing nonconforming buildings or structures and permits the reconstruction of such buildings or structures in substantially the same location and in the same size when decreased in value less than 75% by flood, fire or other casualty, and this, without a permit from the Commission.

■ Also, the central point to be kept in mind when dealing with nonconforming buildings or uses is, that it is the building or the land that is "grandfathered" and not the owner. *Stewart v. Inhabitants of Town of Durham,* 451 A.2d 308, 310 (Me.1982); *Appeal of E & G Auto Parts,* 22 Pa.Cmwlth. 171, 348 A.2d 438, 440 (1975); *State ex rel. Keeven v. City of Hazelwood,* 585 S.W.2d 557 (Mo.App.1979). Once a nonconforming use or building is shown to exist, neither is affected by the user's title or possessory rights in relation to the owner of the land. *Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1260 (Me.1981); *County of Fayette v. Cossell,* 60 Pa.Cmwlth. 202, 430 A.2d 1226, 1229 (1981); *Graham Court As-*

*sociates v. Town Council,* 53 N.C.App. 543, 281 S.E.2d 418, 420 (1981). Where a nonconformity legally exists, it is a vested right which adheres to the land or building itself and the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use. *Johnny Cake, Inc. v. Zoning Board of Appeals,* 180 Conn. 296, 429 A.2d 883, 885 (1980); *Petruzzi v. Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243, 246 (1979); *People v. Smith,* 38 Ill.App.3d 798, 349 N.E.2d 91, 92 (1976).

■ The plaintiff-appellee acted reasonably in seeking Commission approval of her proposed plan to divide and sell her property. In so doing, she sought an official determination of the legality of her proposal from the agency whose duty it is to enforce the Act. She merely invoked the Commission's power to decide whether the proposed division and sale of the three nonconforming lots were permissible. She thereby did not relinquish her rights to the existing nonconforming uses. *Abbadessa v. Board of Zoning Appeals,* 134 Conn. 28, 54 A.2d 675, 678 (1947). *See also Watts v. City of Helena,* 151 Mont. 138, 439 P.2d 767, 769 (1968). The plaintiff-appellee's initial application to the Commission followed the directive of this Court in *State ex rel. Brennan v. R.D. Realty Corporation,* 349 A.2d 201, 206 (Me.1975), which suggested a determination first by the administrative agency, whether a project is subject to regulation by the pertinent authority or exempt therefrom by the "grandfather clause."

*Merits*

■ The only real difference in the change contemplated by the division and sale of the three reference lots is a change in ownership. Without clear language to the contrary, we cannot infer a legislative intendment from any of the provisions of the Saco River Corridor legislation which would prohibit the separate conveyance of parcels of land on which nonconforming buildings or structures have previously and continuously been factually treated sepa-

rately, as in the instant case, simply because they happened to exist in common ownership at the time the zoning law was enacted. *See LaPointe v. City of Saco,* 419 A.2d 1013, 1016 (Me.1980). This is consistent with our holding in *Wickenden v. Luboshutz,* 401 A.2d 995 (Me.1979). This case is distinguishable from *Barnard v. Zoning Board of Appeals of Town of Yarmouth,* 313 A.2d 741 (Me.1974), where the alleged functional division of a large lot into two separate lots was found to exist only in the owner's subjective plan to erect a second dwelling on the land in order to maximize the potential return of her land holdings. In the instant case, the three nonconforming buildings preexisted the legislation.

Section 958 of title 38 provides that an existing [nonconforming] building, structure or nonconforming use may be extended, expanded or enlarged *only* by permit from the commission. The issue is whether Keith's planned separate conveyances of her three separate nonconforming dwellings with suitable curtilages of land as continuously functionally used by tenants prior to and since the enactment of the Saco River Corridor legislation, without resulting compliance with aggregate of setback and frontage requirements of 38 M.R.S.A. § 957–B.3.E.5, constitutes an unlawful extension, expansion or enlargement of a previously existing nonconforming use. We are aware that, in construing legislation dealing with nonconforming uses recognized as a valid means of preserving particular uses of property existing prior to the enactment of a zoning law, the accepted legal standard has been to strictly construe zoning provisions relating to the extension, expansion or enlargement of nonconforming buildings or uses. *See Abbot v. Commonwealth,* 56 Pa.Cmwlth. 482, 425 A.2d 856, 858 (1981). But the plaintiff's proposed conveyance of three separate lots with their respective nonconforming buildings thereon in the instant case does not come into conflict with the stated principle.

Indeed, the test to be used to determine whether the questioned use of property fits within the "grandfathered" or exempted use granted to nonconforming uses is: (1) whether the use reflects the "nature and purpose" of the use prevailing when the zoning legislation took effect; (2) whether there is created a use different in quality or character, as well as in degree, from the original use, or (3) whether the current use is different in kind in its effect on the neighborhood. *Town of Bridgewater v. Chuckran,* 351 Mass. 20, 217 N.E.2d 726, 727 (1966). Examples of unlawful extensions, expansions or enlargements of nonconforming uses will be seen in cases such as *Appeal of Veltri,* 355 Pa. 135, 49 A.2d 369 (1946); *Fulford v. Board of Zoning Adjustment,* 256 Ala. 336, 54 So.2d 580 (1951); *Salerni v. Scheuy,* 140 Conn. 566, 102 A.2d 528, 530–31 (1954); *Council of the Town of Los Gatos v. State Board of Equalization,* 141 Cal.App.2d 344, 296 P.2d 909 (1956); *Jasper v. Michael A. Dolan, Inc.,* 355 Mass. 17, 242 N.E.2d 540 (1968); *New Castle County v. Harvey,* 315 A.2d 616 (Del.Ch., 1974); *Hooper v. Delaware Alcoholic Beverage Control Commission,* 409 A.2d 1046 (Del.Supr., 1979). *But see Schneider v. Board of Appeals,* 402 Ill. 536, 84 N.E.2d 428 (1949); *Keller v. City of Bellingham,* 92 Wash.2d 726, 600 P.2d 1276 (1979).

The mere change from tenant occupancy to owner occupancy in the instant case is not an extension, expansion or enlargement of the previously existing nonconforming buildings, structures or use within the meaning of the restrictive provision of section 958. *Beers v. Board of Adjustment of Township of Wayne,* 75 N.J.Super. 305, 183 A.2d 130 (1962); *Town of Seabrook v. Tra-Sea Corporation,* 119 N.H. 937, 410 A.2d 240, 244 (1979); *Town of Coventry v. Glickman,* 429 A.2d 440, 442 (R.I.1981). *See also Graham Court Associates v. Town Council,* 53 N.C.App. 543, 281 S.E.2d 418 (1981) (conversion to condominium style of ownership). The case of *Isabelle v. Town of Newbury,* 114 N.H. 399, 321 A.2d 570 (1974), is distinguishable from the instant case, since in *Isabelle* the town had specific subdivision regulations properly

**156**

enacted under enabling legislation, whereas the Saco River Corridor Act does not purport to regulate land subdivisions. The post-sale fragmented title in no way would modify the nature or purpose of the preexisting nonconformity of the respective buildings on the land, nor would it reflect any alteration in the land use itself prevailing at the time the Saco River Corridor Act took effect, nor would it under any view of the factual situation create a new use different in quality, character or degree, from the original use; no change in intensity of use would result. Had the Keith holdings as functionally divided been owned by three different individuals at the time of the Act and each of them desired to convey his separate lot, there would be no zoning impediment to the sale. We cannot see wherein a different result should obtain simply because all the already functionally divided lots are owned by only one person. *See Goldstein v. Lincoln Park Planning Board,* 52 N.J.Super. 44, 144 A.2d 724, 727 (1958). *See also Appeal of E & G Auto Parts,* 22 Pa.Cmwlth. 171, 348 A.2d 438, 440 (1975).

For the reasons stated, we conclude and hold that the plaintiff-appellee may as a matter of law convey the reference dwellings with the proposed suitable delineated lots without being in violation of the Saco River Corridor Act and do affirm the judgment of the Superior Court, to the extent that it declares the rights of the plaintiff-appellee as the following entry indicates:

Judgment affirmed.

The proposed change of occupancy from tenant-occupation to owner-occupation is not a change of use, nor does it constitute an extension, expansion or enlargement of the existing lawful nonconforming use in violation of 38 M.R.S.A. § 957–B.3.E(3) and (5) or § 958.

All concurring.