IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-406

Filed: 18 February 2020

Rockingham County, No. 17 CVS 1645

STARLITES TECH CORP., Petitioner,

v.

ROCKINGHAM COUNTY, Respondent.

Appeal by petitioner from order[1] entered 1 October 2018 by Judge William A. Wood in Rockingham County Superior Court. Heard in the Court of Appeals 30 October 2019.

*Nelson Mullins Riley & Scarborough LLP, by Stuart H. Russell and Lorin J. Lapidus, for petitioner-appellant.*

*The Brough Law Firm, PLLC, by G. Nicholas Herman and John M. Morris, for respondent-appellee.*

ZACHARY, Judge.

Petitioner Starlites Tech Corp. ("Starlites") appeals from an order of the superior court affirming the Rockingham County Board of Adjustment's determination that the operation of Starlites' business violated the special use permit requirements set forth in Rockingham County's amended Unified Development Ordinance. After careful review, we reverse.

---

[1] We note that the judgment mistakenly refers to 17 CVS 1644.

## Background

Starlites Tech Corp. owner and president Maurice Raynor operated multiple electronic gaming businesses. Raynor served as the president of M, M & K Developments, Inc. ("MM&K"), and was the owner and president of Starlites Technology, Inc.

On 30 September 2011, Danny D. Fulp conveyed the property located at 11652 U.S. 220 Highway, Stoneville, North Carolina, (the "Property"), to MM&K. On 1 May 2014, Rockingham County issued a zoning permit to MM&K, enabling it to "operate a sweepstakes business" in accordance with the County's Unified Development Ordinance (the "Ordinance"). The permit designated MM&K as the owner of the property, and "Starlite Technologies" as the applicant and occupant. The permit's description noted a "change of use to sweepstakes business" and the "addition of [a] 28x45 shelter."

A few months later, on 2 September 2014, the County amended the Ordinance, setting forth permit requirements that "severely restricted the general operation of sweepstakes businesses in the county." Article II of the amended Ordinance defined "Electronic Gaming Operations," in pertinent part, as: "[a]ny for-profit business enterprise where persons utilize electronic machines or devices, including but not limited to, computers and gaming terminals, to conduct games of odds or chance, including sweepstakes[.]"

Article IX Section 9-11(ii) set forth new restrictions for electronic gaming operations and, by extension sweepstakes businesses. The restrictions included, in relevant part, a requirement that electronic gaming operations obtain a special use permit, which in turn, required that the facility be "setback[ ] 1500 feet from any protected facility." Protected facilities included, *inter alia*, single- and multi-family dwellings. The amended Ordinance posed a problem for MM&K and Starlites Technology, Inc. because the Property was "approximately 680 feet from the nearest single family dwelling unit."

On 21 January 2015, articles of incorporation were filed for Starlites in order to turn "the Starlites Technology, Inc. S Corp into a corporation under the advice of [Raynor's] attorney." On 30 January 2015—approximately nine months after the zoning permit was issued—MM&K conveyed the Property to Starlites. Soon thereafter, on 14 July 2015, articles of dissolution were filed for Starlites Technology, Inc. and MM&K. Following MM&K's dissolution, no application was filed to amend the original zoning permit issued to MM&K on 1 May 2014 to indicate that the Property had been conveyed to Starlites.

In November 2016, Officer Ben Curry of the Rockingham County Code Enforcement Division received a complaint about the Property and determined that the business constituted a development without a permit. Officer Curry issued

notices of violation to Starlites on 21 November 2016, 9 December 2016, and 3 January 2017.

Starlites appealed the initial notice of violation to the Rockingham County Board of Adjustment ("the Board") on 21 December 2016. Starlites' appeal came on for hearing by the Board on 14 August 2017. Starlites argued that the notices of violation were defective, that Starlites had never ceased operation and was not subject to the special use permit requirement, and that Starlites ran a "Promotional Gaming Establishment" rather than an "Electronic Gaming Operation." Starlites presented Raynor's testimony along with invoices that Raynor paid in conjunction with the continued operation of his businesses.

On 11 September 2017, the Board entered an order denying Starlites' appeal. The Board concluded that Starlites' business operation violated the County's amended Ordinance, that Starlites failed to obtain a special use permit, and that Starlites was not exempt from the requirement to obtain a special use permit.

Starlites appealed by filing a petition for writ of certiorari with the Rockingham County Superior Court on 10 October 2017, seeking review of the order for factual and legal errors. Starlites argued, in part, that the Board's decision was erroneous, and that the order was:

> b. In excess of the statutory authority conferred upon the Board;
>
> . . . .

d. Unsupported by substantial competent evidence in view of the entire record because there was no evidence contradicting Starlites' showing that its business operations on the Property had been continuously operated since prior to the 2014 adoption of the disputed amendment to the DSO;

e. Unsupported by substantial competent evidence in view of the entire record because there was no evidence to suggest that Starlites was operating an "electronic gaming operation" as defined by the Rockingham County [Unified Development Ordinance];

f. Affected by other error of law; and

g. Arbitrary or capricious since the Board should not have heard the Appeal due to lack of proper service of a Notice of Violation, because the Board was not impartial, and because there was no legal basis for the Decision.

The case came on for hearing before the superior court on 25 September 2018.

On 1 October 2018, the superior court entered an order affirming the Board's order and dismissing Starlites' appeal. The superior court concluded, in pertinent part:

2. On *de novo* review, upon dissolution of [MM&K] on July 10, 2015, the business ceased and was no longer a legally permitted nonconforming use because [Starlites] never applied for an amended or new zoning permit; and, even if the business resumed as a nonconforming use at some point after dissolution of [MM&K], there was competent evidence under the whole record test for the [Board] to conclude that the business was discontinued for more than one year from and after July 2015 such that [Starlites] was required after this discontinuance to obtain zoning approval under the requirements of the 2014 [Ordinance] amendment for "electronic gaming operations."

Starlites timely filed written notice of appeal to this Court.

## Standard of Review

Our review "is limited to determining whether the superior court applied the correct standard of review, and to determin[ing] whether the superior court correctly applied that standard." *Overton v. Camden Cty.*, 155 N.C. App. 391, 394, 574 S.E.2d 157, 160 (2002). We review a superior court's interpretation of a zoning ordinance de novo, and "apply the same principles of construction used to interpret statutes." *Fort v. Cty. of Cumberland*, 235 N.C. App. 541, 548-49, 761 S.E.2d 744, 749, *disc. review denied*, 367 N.C. 798, 766 S.E.2d 688 (2014).

## Discussion

On appeal, Starlites argues, in part, that the superior court applied the wrong standard of review in affirming the Board's decision. Specifically, Starlites maintains that the superior court erroneously concluded, under de novo review, that the Property's "change of ownership caused its use to discontinue, which prohibited Starlites from operating as a permissible prior non-conforming use under Rockingham County's Unified Development Ordinance[,]" and that "change of ownership is an impermissible factor to support a determination that the Stoneville property became a non-conforming use under the 2014 amended [Ordinance]." We agree that a change of ownership does not constitute a change of use.

A county board of adjustment sits in a quasi-judicial capacity. Its decisions must "be based upon competent, material, and substantial evidence in the record." N.C. Gen. Stat. § 160A-388(e2)(1) (2019). Every quasi-judicial decision is "subject to review by the superior court by proceedings in the nature of certiorari pursuant to [N.C. Gen. Stat. §] 160A-393." *Id.* § 160A-388(e2)(2).

In reviewing the decision of a board of adjustment, the superior court sits as an appellate court. Its review is limited to "determinations of whether 1) the board committed any errors in law; 2) the board followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the board's decision was supported by competent evidence in the whole record; and 5) . . . the board's decision was arbitrary and capricious." *Overton*, 155 N.C. App. at 393, 574 S.E.2d at 159 (citation omitted). *See also* N.C. Gen. Stat. § 160A-393(k) (addressing the superior court's scope of review on appeal).

The standard of review applied by the superior court depends upon the substantive nature of each issue presented on appeal. *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 155, 712 S.E.2d 868, 870 (2011) (citation omitted). "When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citation

and internal quotation marks omitted). On the other hand, de novo review is proper when the petitioner contends that the board's decision was based on an error of law. *Id.*

Under de novo review, an appellate "court considers the case anew and may freely substitute its own interpretation of an ordinance for a [board's] conclusions of law." *Morris Commc'ns Corp.*, 365 N.C. at 156, 712 S.E.2d at 871; *see id.* (noting that this Court has previously determined that "the superior court, sitting as an appellate court, *could* freely substitute its judgment for that of [the board] and apply *de novo* review as *could* the Court of Appeals with respect to the judgment of the superior court" (citations omitted)). Thus, "reviewing courts may make independent assessments of the underlying merits of board of adjustment ordinance interpretations," which, in turn, "emphasizes the obvious corollary that courts consider, but are not bound by, the interpretations of administrative agencies and boards." *Id.* (citations and internal quotation marks omitted). We employ this approach for our de novo analysis below.

After a hearing, the Board entered an order denying Starlites' appeal, concluding that Starlites' business operation violated the Ordinance, that Starlites did not obtain a special use permit, and that Starlites was not exempt from the requirement to obtain a special use permit as a permissible nonconforming use. The Board also made the following relevant findings of fact:

14.  At no time prior to submitting an appeal did [Raynor] file documentation establishing his business constituted a grandfathered, non-conforming use that has continuously operated since 2014 thereby exempted from the special use requirements of [the Ordinance], Chapter 2, Article IX, Section 9-11(ii).

. . . .

18.  At the hearing, [Starlites] presented invoices from White Sands Technology billed to NC-Starlites Technology Inc. from January 2014 to July 2015 and invoices from [R]edibids billed to NC-[Starlites] from July 2015 to September 2015.

19.  At the hearing, [Starlites] presented Articles of Incorporation from the North Carolina Secretary of State indicating that [Starlites] was not created until January 21, 2015.

20.  At the hearing, [Starlites] presented additional invoices from Baracuda [sic] Enterprises billed to [Raynor] [by] email . . . from January 2016 2015 [sic] to August 2017.

21.  At no time prior to submitting an appeal did [Raynor] file to amend his zoning permit issued to [MM&K] on May 1, 2014.

On appeal to the superior court, Starlites, challenged, *inter alia*, the following

of the Board's conclusions:

2.  [Raynor's] electronic gaming operation has not continuously operated since 2014.

3. [Raynor's] electronic gaming operation is not an exempt non-conforming use.

. . . .

6. [Raynor's] electronic gaming operation is in violation of the special use permit requirements as set forth in [the Ordinance], Chapter 2, Article IX, Section 9-11(ii) because he is operating without a special use permit.

7. Based on the foregoing Findings of fact and Conclusions of Law, the [Board] concludes that the applicant has not met his burden on appeal.

Starlites argued, *inter alia*:

15. The Decision erroneously contends that Starlites has not been continuously operating its business on the Property since 2014. However, Starlites produced uncontested evidence in the form of testimony and business receipts showing that its business on the Property had been continuously operating an electronic gaming business prior to 2014 and had not been closed for more than a year.

16. The Decision erroneously contends that Starlites' business on the Property is not an exempt non-conforming use. But since Starlites has been continuously operating an electronic gaming business on the Property since before 2014, its business on the Property is in fact an exempt non-conforming use under Chapter 2, Article XII of the [Ordinance].

17. The Decision erroneously contends that Starlites is in violation of the [Ordinance] because it has not obtained a special use permit for its business on the Property. But Starlites is not required to obtain a special use permit because its business is an exempt non-conforming use. Also, Starlites' business on the Property is not an Electronic Gaming Operation as defined by Chapter 1 Article II of the [Ordinance]. Thus, Starlites' business on the Property does not require a special use permit.

On review of the Board's interpretation of the amended Ordinance as it pertains to nonconforming use, we "apply the same principles of construction used to

interpret statutes." *Fort*, 235 N.C. App. at 549, 761 S.E.2d at 749. "In interpreting a municipal ordinance the basic rule is to ascertain and effectuate the intent of the legislative body. Intent is determined according to the same general rules governing statutory construction, that is, by examining (i) language, (ii) spirit, and (iii) goal of the ordinance." *Capricorn Equity Corp. v. Chapel Hill*, 334 N.C. 132, 138, 431 S.E.2d 183, 187-88 (1993) (internal citations and quotation marks omitted). Because "zoning ordinances are in derogation of common-law property rights, limitations and restrictions not clearly within the scope of the language employed in such ordinances should be excluded from the operation thereof." *Id.* at 139, 431 S.E.2d at 188.

Article II of the amended Ordinance defines "nonconformance" as "[a] lot, structure or land use that is inconsistent with current zoning requirements, but which was entirely lawful when it was originally established." Article XIII Section 13-4(f) addresses the impact on nonconforming uses of structures that were in existence when the amended Ordinance was enacted:

> When any nonconforming use of a structure is discontinued for a period of one year, any future use of the structure shall be limited to those uses permitted in that district under the provisions of this ordinance. Vacancy and/or non-use of the building, regardless of the intent of the owner or tenant, shall constitute discontinuance under this provision.

The amended Ordinance also provides that:

No Special Use Permit shall be granted by the Planning Board unless each of the following findings is made concerning the proposed special use:

(a)     That the use or development is located, designed, and proposed to be operated so as to maintain or promote the public health, safety, and general welfare;

(b)     That the use or development complies with all required regulations and standards of this ordinance and with all other applicable regulations;

(c)     That the use or development is located, designed, and proposed to be operated so as to maintain or enhance the value of contiguous property or that the use or development is a public necessity; and

(d)     That the use or development conforms with the general plans for the land use and development of Rockingham County as embodied in this chapter and in the Rockingham County Development Guide.

There shall be competent, material and substantial evidence in the record to support these conclusions and the Planning Board must find that all of the above exist or the application will be denied.

Approximately four months before the amended Ordinance was enacted, Rockingham County issued a zoning permit allowing MM&K to operate a sweepstakes business on the Property, in compliance with the County's then-existing Ordinance.  The permit designated MM&K as the Property's owner, and "Starlite Technologies" as the applicant and occupant.  The County's approval of MM&K's permit application indicates that, at the time the permit was issued, the Property

met and complied with the requirements for such a permit. The Property's subsequent change of ownership had no impact on the *use* of the Property.

Starlites maintains that section 13-4(f) of the amended Ordinance essentially constitutes a "grandfather clause," allowing a prior permissible nonconforming use to continue so long as such use was not discontinued for a period of one year. We agree. We base our decision, first and foremost, upon the plain language of section 13-4(f) of the amended Ordinance. Moreover, we note that the amended Ordinance contains no provision that a change in ownership will constitute a "new" use or otherwise invalidate a prior permissible nonconforming use.

This Court previously addressed a similar issue in *Graham Court Associates v. Town Council of Chapel Hill*, 53 N.C. App. 543, 281 S.E.2d 418 (1981). In *Graham Court*, we examined "whether the power to control the *uses* of property through zoning extends to control of the manner in which the property is owned." 53 N.C. App. at 544, 281 S.E.2d at 419. Specifically, we considered whether a "change in ownership . . . constitutes a change in use which the town can regulate by its zoning ordinance[,]" and ultimately held that it does not. *Id.* at 547, 281 S.E.2d at 420.

As our Court explained, "zoning is the regulation by a municipality of the *use* of land within that municipality, and of the buildings and structures thereon – not regulation of the *ownership* of the land or structures." *Id.* at 546, 281 S.E.2d at 420 (citation omitted). "The test of nonconforming use is 'use' and not ownership or

- 13 -

tenancy." *Id.* at 547, 281 S.E.2d at 420 (citation omitted). Consequently, "[c]hanging the type of ownership of real estate upon which a nonconforming use is located will not destroy a valid existing nonconforming use." *Id.* at 550, 281 S.E.2d at 422 (citation omitted). "[W]e do not regard a mere change from tenant occupancy to owner occupancy as an extension or alteration of the previous non-conforming use of the dwellings. And there is no question as to the right of [alienability] of property along with its attendant valid non-conforming use." *Id.* at 548, 281 S.E.2d at 421 (citation omitted).

MM&K conveyed the Property to Starlites on 30 January 2015—nine days after Starlites was incorporated on 21 January 2015, and approximately nine months after the zoning permit was issued. A few months later, on 14 July 2015, articles of dissolution were filed for both Starlites Technology, Inc. and MM&K.

At the hearing before the Board, Raynor testified that he dissolved both entities "when the sweepstakes was officially . . . not allowed to operate anymore according to the State." Raynor further testified that the decision to dissolve Starlites Technology, Inc. and MM&K was also based, in part, on "consolidat[ion]" because he determined that he "had too many companies[.]" According to Raynor, "Watts Group was a separate company that had stores of its own as well as Starlites Technology, Inc., has stores of its own. MM&K was just a development company. It only owns the property. That's all—that's all it ever has."

In addition, Raynor testified about the use of certain software at the Property, and proffered invoices to evidence the resulting expenses incurred during the disputed "continuous use" of the Property. When a member of the Board asked Raynor whether Raynor had "change[d] . . . the type of business" conducted, Raynor replied that the business was "still underneath the same promotional—getting promotional items. Still using the desktop computers. Everything was still the same. It's just a different kind of format they made." In sum, Raynor testified that the use of the Property remained the same, and that there had merely been a change in ownership due to the consolidation of his companies.

In his closing argument, Starlites' defense counsel summarized the evidence as follows:

> [Raynor] has been operating his business at this location well before the ordinance at issue was passed. The ordinance that the County maintains he's got to comply with was passed, again, in September 2014. It's an electronic gaming ordinance. Well before September 2014 and on a continuous basis, he was offering his customers promotional games.
>
> The software changed. When the sweepstakes laws changed, he adopted a skill test, but all throughout, he's been operating a business there and he's been offering his customers promotional games. So he is a prior nonconforming use. He's grandfathered in. This ordinance doesn't apply to him, and that's why he hasn't applied for it[.]

In addition, to demonstrate "continuous use" of the Property, Raynor submitted invoices showing his payment of expenses both before and after September 2014, when the amended Ordinance was enacted.

Accordingly, the Board improperly concluded that under the provisions of the amended Ordinance, a change in ownership constituted a change in use, and that Starlites was required to amend its zoning permit in order to legally continue the same use of the Property.

"Remand is not automatic when an appellate court's obligation to review for errors of law can be accomplished by addressing the dispositive issue(s)." *Morris Commc'ns Corp.*, 365 N.C. at 158, 712 S.E.2d at 872 (citation and internal quotation marks omitted). "Under such circumstances the appellate court can determine how the trial court *should have* decided the case upon application of the appropriate standards of review." *Id.* at 158-59, 712 S.E.2d at 872. Here, we can "reasonably determine from the record[,]" *id.* at 159, 712 S.E.2d at 872-73 (citation omitted), that Starlites' challenge to the Board's interpretation of the amended Ordinance warrants reversal of the Board's ultimate decision.

Because this issue is dispositive, we need not address Starlites' additional arguments.

## Conclusion

"In sum, the rule of construction that zoning ordinances are strictly construed in favor of the free use of real property is appropriately applied here." *Id.* at 162, 712 S.E.2d at 874. The Board improperly concluded that Starlites was in violation of the 2014 amended Ordinance. Accordingly, because the Board's interpretation of its amended Unified Development Ordinance constituted an error of law, we reverse.

REVERSED.

Judges STROUD and MURPHY concur.