**Alvah HENDRICKSON**

v.

**David M. WRIGHT.**

Supreme Judicial Court of Maine.

Dec. 24, 1971.

———◆———

Aldrich & Aldrich, by Rupert F. Aldrich, South Paris, for plaintiff.

David M. Wright, Hamilton, Mass., for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal. Plaintiff brought an action to recover the consideration agreed to be paid for the sale of certain real estate (the Stony Brook lot), namely, Twenty-five Hundred Dollars ($2,500.00). The defendant admitted this obligation but filed a counterclaim [1] asserting an overpayment for land (the Merrill Farm) previously purchased, which plaintiff denied. Jury trial was waived and the single Justice made the following ruling on the counterclaim:

"The defendant by way of his counterclaim seeks to recover damages for breach of agreement whereby plaintiff allegedly contracted orally to convey to defendant a certain number of acres of land at a stipulated price per acre. Upon this record the believable and creditable evidence fails to give any support to the defendant's claim. Though there was talk of acreage during negotiation for the sale the entire parcel as described in the conveyance deed is all that was contemplated for the stipulated and agreed selling price. On the counterclaim judgment shall be entered for Alvah Hendrickson without costs."

The record supports the conclusion of the Justice below and the appeal must be denied.

The plaintiff owned the fee in both parcels of real estate sold the defendant, but the mineral rights in the Merrill Farm were owned by Merton E. Rawson who, it is claimed, was acting as the plaintiff's agent. The Merrill Farm was conveyed to the defendant on March 12, 1969, and on March 17th, the consideration, $4,000.00, was paid. The Stony Brook lot was conveyed on April 17, 1969, and, although the deed was delivered and recorded, the consideration of $2,500.00 was not paid.

In consummating these sales the defendant dealt through an agent, Robert K. Stewart, whose authority to bind the defendant is not in dispute. It is alleged Mr. Rawson (now deceased), acting for the plaintiff, represented to Mr. Stewart that the Merrill Farm contained two hundred (200) acres and could be purchased at the rate of $20.00 per acre. The plaintiff denies having authorized such a representation or that he had any knowledge that Mr. Rawson made such a commitment.

Before the deed was signed, however, Mr. Stewart had a personal conversation with the plaintiff:

"A  I went out to his home in, I believe, South Woodstock and I told him that I had seen the property with

1.            "COUNTERCLAIM

6) Defendant, acting through his agent, prior to the transaction described in the Complaint, negotiated with Plaintiff for the purchase of the 'Merrill Farm' so-called.

7) Plaintiff represented to Defendant's agent that the said Merrill Farm consisted of about 220 acres.

8) Plaintiff agreed with Defendant, acting through Defendant's agent, that the purchase price for the said Merrill Farm would be approximately Twenty dollars ($20.00) per acre, which figure was rounded to an even Four thousand dollars ($4,000).

9) Defendant paid to Plaintiff the sum of Four thousand dollars ($4,000) for the purchase of the said Merrill Farm.

10) Subsequent investigation disclosed that the said Merrill Farm consisted of approximately 102 acres, being 46.36% of the acreage represented by Plaintiff.

11) 46.36% of the Four thousand dollar purchase price equals One thousand eight hundred fifty-four dollars and forty cents ($1,854.40)."

Mr. Rawson, that a price had been mentioned to me at that time

. . . .

. . . .

Q (By Mr. Fales): You may quote Mr. Hendrickson and relate what you said to Mr. Hendrickson.

A I told him that I would like to pay instead of four thousand dollars, I thought that maybe we could get the land for $3500.00, and—which I related to him was, I thought, a price slightly below twenty dollars an acre but in line with what I thought the land was worth, and he said no, that would be impossible. He says he would have to, in turn, pay Mr. Rawson for apparently the mineral rights to the land which he did not at that time own.

Q Was there any conversation as to whether or not Merton Rawson had shown you the land which you were bargaining for?

A I had told Alvah—Mr. Hendrickson that I had seen the land and that I had—we had mentioned the figure of two hundred acres.

Q What did he say to that?

A He said it sounded reasonable and yet he doesn't seem to know too much about—I think in many cases—about the actual land that he owns. And he said that if this is what Mert says there is, this is actually in fact what there is for acreage. He said—I believe—I mean I know that Mr. Rawson at one time did own that land; this is my understanding."

The plaintiff, in his deposition testified:

"Q. Did you ever hear the price, $20 per acre, discussed?

A. Well, way back, when Stewart— well, he—he said that 'I'd like to buy it at $20.' . . . .

MR. ABBOTT. Q. But Stewart did say to you that he wanted to buy the land for $20 an acre or—

A. Well, he talked to me some. He said, 'I—I figure I ought to get some land.' Well, if he can get it, get it. But I—I didn't say nothing about acreage nowhere.

Q. But he did—he did set the price at $20 an acre?

A. No, he didn't set anything. He said that—land, he'd like to buy some for $20.

Q. Did you understand through Mr. Rawson that that's what Stewart intended to pay for this land, was $20 an acre?

A. No, he didn't say anything.

Q. In other words, Rawson said nothing to you about the price per acre?

A. No, no. He said that, 'He'll give you 4,000.' "

In his deposition the plaintiff limits the authority of Mr. Rawson to sell the Merrill Farm by this language: "Well, he told me he could get 4,000. And I said, 'Sell the thing.' "

Before the deed was executed and the consideration paid, Mr. Stewart knew from the plaintiff that it was "impossible" to purchase the land for less than Four Thousand Dollars ($4,000.00) and that Mr. Rawson was personally interested in the sale, owning the "mineral rights," for which he would be paid out of the proceeds of the sale.

If we assume that Mr. Stewart understood from Mr. Rawson that the consideration to be paid for the Merrill Farm was based on a price of $20.00 per acre, is the plaintiff bound thereby?

"An agent authorized to sell real estate is generally deemed to be a special agent acting under a limited power, rather than a general agent. He has the power

to do only those acts specifically named in his contract of agency. . . .

It follows from the nature of the agent's authority that one dealing with an agent authorized to sell land must inquire into the extent of the agent's authority and deal with him at his peril. . . ." 3 Am.Jur.2d, Agency § 119.

■ Persons dealing with an agent authorized to sell real estate are bound to ascertain the extent of the agent's power. Spengler v. Sonnenberg (1913), 88 Ohio St. 192, 102 N.E. 737. An agent can bind the principal only if all terms and conditions have been authorized. Swift v. Erwin (1912), 104 Ark. 459, 148 S.W. 267. If the principal is to be bound by unauthorized acts of an agent it is essential for ratification of such acts that he know all the facts. Payne v. Jennings (1926), 144 Va. 126, 131 S.E. 209.

■ These rules become particularly stringent when it is known that the agent is acting in his own personal interest; and, to that extent, adversely to his principal. It is then the legal duty of one dealing with an agent so postured to make inquiry as to the extent of the agent's authority and, as a matter of law, such a person is chargeable with knowledge of such facts as could have been obtained by such an inquiry. American Realty Co. v. Amey (1922), 121 Me. 545, 118 A. 475.

■ The defendant failed to establish that the plaintiff had authorized the sale on an acreage basis. Neither did he show any ratification by the plaintiff of Mr. Rawson's offer to Mr. Stewart on this basis, if such was made. The defendant's agent knew it was necessary to allocate part of the consideration to Mr. Rawson to pay for the mineral rights, thus reducing the amount to be received by the plaintiff. It was Mr. Stewart's duty, representing the defendant, to ascertain the extent of Mr. Rawson's authority before consummating the sale. The plaintiff is not bound by unauthorized and unratified commitments of Mr. Rawson.

The Justice below concluded, on the facts, that the contract of sale for the entire Merrill Farm was for one price, namely, $4,000.00, without regard to the acreage. The record before us supports such a finding.

The entry is

Appeal denied. ·

All Justices concurring.