STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-2014-43      ✓

)
AMERICAN HOLDINGS                       )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )     **ORDER ON DEFENDANT'S MOTION**
TOWN OF NAPLES, et al.                  )     **FOR    RECONSIDERATION    AND**
                                        )     **PLAINTIFF'S MOTION FOR ENTRY OF**
            Defendants.                 )     **FINAL JUDGMENT**
                                        )

## I. INTRODUCTION

Before the Court is Defendant Town of Naples' (the "Town") Motion for Reconsideration of this Court's Order on Parties' Cross Motions for Partial Summary Judgment dated March 23, 2015. In response Plaintiff, American Holdings, has moved this Court for entry of final judgment pursuant to M.R. Civ. P. 54(b)(1). The Court has reviewed the parties' filings, the last of which was dated April 8, 2015, and issues this Order denying the Defendant's motion and granting entry of final judgment in favor of the Plaintiff.

## II. ANALYSIS

1. Defendant's Motion for Reconsideration

"Ordinarily, a motion for reconsideration is appropriate only if a moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the moving party can demonstrate that the original decision was based on manifest error of law or was clearly unjust." *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 600 F. Supp. 2d 94, 97 (D. Me. 2009) (citing *United States v. Allen*, 573 F.3d 42, 53 (1st Cir.2009)). In Maine,

1

motions for reconsideration shall only be filed "to bring to the court's attention to an error, omission or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). "The court may in its discretion deny a motion for reconsideration without hearing and before opposition is filed."[1]

The crux of the Town's argument is set forth on page 6 of its motion: "While the Town believes that the Court appropriately found that the prior use of the main building was commercial in nature, the conclusion reached by the Court that there was never any change in use in this building is not supported by undisputed facts." The Town specifically challenges the Court's findings on pages 14 and 17 of its order on this issue.

The Town argues that prior to the November 16, 2006 Condominium Declaration, the first and second floors in the main building were rented to commercial tenants. At some point in time, which the Town concedes is not clear in the summary judgment record, and before the Declaration was filed, these businesses ceased operating. The Declaration created five single-family residential units, and this residential use was reaffirmed by the first and second amendments to the Declaration.

Based on these facts, the Town argues essentially that the filing of the Declaration created an illegal subdivision because of this change of use. American Holdings and the Parties-In-Interest Katherine E. Bourbon, Bruce Landry, Jennifer Landry and John Hudgins point out, however, that the Town's analysis ignores the requirement that three or more of the original five condominium units in the main building had to have been sold or leased as dwelling units within

---

[1] The Advisory Committee on the Maine Rule of Civil Procedure explains that Rule 7(b)(5) was added to "make[] clear that such motions are not to be encouraged. Too frequently, disappointed litigants bring motions to reconsider not to alert the court to an error . . . but solely to reargue points that were or could not have been presented to the court on the underlying matter." M.R. Civ. P. 7(b)(5) Advisory Committee's note to 2000 amend. Me. Rptr., 746-754 A.2d XXVIII. *See also City of Portland v. Let's Play Around, LLC*, 2008 WL 7055404.

2

a five-year period for any subdivision to have been created. And as they point out, the Town does not mention the five-year requirement at all in its argument in this motion. Further, as the Parties-In-Interest point out, the Town has failed cite any statute or case in support of its proposition that the recording of the Declaration by itself creates a subdivision.

The Town also relies upon *Day v. Town of Phippsburg*, 2015 ME 13, 110 A.3d 645 as new authority, which the Court should use in its reconsideration analysis. However, upon review the Court does not find this case applicable to the facts as generated in the summary judgment record before this Court. The Court concludes that the Town's arguments made in this motion have already been made and were rejected by the Court in its prior Order, and therefore the Town's Motion to Reconsider that Order is Denied.

2. Plaintiff's Motion for Entry of Final Judgment

Plaintiff, unopposed, seeks Final Judgment under Rule 54(b)(1) of the Maine Rules of Civil Procedure. "Rule 54(b) requires a trial court to make an express determination that there is no just reason to delay the entry of a final judgment on a claim. *Key Bank of Maine v. Park Entrance Motel*, 640 A.2d 211, 212 (Me. 1994). In determining whether there is "no just reason for delay" Maine courts consider:

(1) The relationship of the adjudicated and unadjudicated claims;

(2) The possibility that the need for review may be mooted by future developments in the trial court;

(3) The chance that the same issues will be presented to us more than once;

(4) The extent to which an immediate appeal might expedite or delay the trial court's work;

(5) The nature of the legal questions presented as close or clear;

3

(6) The economic effects of both the appeal and any delays on all of the parties, including the parties to the appeal and other parties awaiting adjudication of unresolved claims; and

(7) Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

*McClare v. Rocha*, 2014 ME 4, ¶ 8 n.1, 86 A.3d 22 (quoting *Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 13, 36 A.3d 861). Maine courts have further held that a final judgment should be entered "only in limited and special circumstances . . . . Because there is a strong policy against piecemeal review of litigation, there must be a good reason for the certification." *Guidi v. Town of Turner*, 2004 ME 42, ¶ 9, 845 A.2d 1189. Thus, the Court must "determine whether the facts of this case constitute such an unusual circumstance."[2] *Id.* ¶ 10.

In this case, the Court sees no just reason to delay entry of judgment in favor of American Holdings. Applying the factors above, this case meets many of the Rule 54(b) considerations. First, the adjudicated claim, involving the applicability of Town zoning ordinances and subdivision laws are unrelated to the remaining counterclaims. Said counterclaims are permissive in nature and concern only the legality of certain individual condominium units owned by Parties-in-Interest. American Holdings has no apparent interest at stake as to the remaining counterclaims. The Law Court has stated, "the existence of a related claim that does not affect the rights of the plaintiff should not generally prevent entry of a judgment on the plaintiff's claim." *Fleet Nat'l Bank v. Gardiner Hillside Estates, Inc.*, 2002 ME 120, ¶ 12, 802 A.2d 408; *see also Fleet Bank of Me. v. Hoff*, 580 A.2d 690, 691 (Me. 1990) (upholding the trial court's entry of final judgment where other claims arose out of the same transaction but concerned only indemnification and personal guarantees).

---

[2] The court's statement of specific findings may be short, but it must be more than a summary recitation of the provisions of M.R. Civ. P. 54(b)(1). *Guidi v. Town of Turner*, 2004 ME 42, ¶ 9, 845 A.2d 1189.

4

Second, because the claims involve different parties, it is highly unlikely that the reviewing court will face the same issues more than once. Finally, the economic effects of delay are considerable to the Plaintiff as the litigation has prevented the sale of condo units. Upon review of the Plaintiff's Motion for Entry of a Final Judgment pursuant to Rule 54(b), the Court hereby finds that there is no just reason for delay and directs entry of final judgment in favor of Plaintiff American Holdings.

### III. CONCLUSION

Based on the Foregoing the entry will be: Town of Naples' Motion to Reconsider is DENIED. American Holdings' Motion for Entry of Final Judgment is GRANTED.

This Order may be noted on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

_5/5/15_
DATE

SUPERIOR COURT JUSTICE, BUSINESS
AND CONSUMER COURT

Entered on the Docket: 5/6/15
Copies sent via Mail___ Electronically ✓

5

American Holdings, Inc. v. Town of Naples
American Holdings, Inc., Kristopher Klimek and Barbara Klimek v.
Christopher Merrill & Estate of Jerry Merrill, and Katherine E. Bourbon, et als.
BCD-CV-14-43

**American Holdings, Inc.**
    Plaintiff / 3rd Party Plaintiff

        Counsel:               David Lourie, Esq.
                               189 Suprwink Ave
                               Cape Elizabeth, ME 04107

**Kristopher Klimek and Barbara Klimek**
    Intervenor / 3rd Party Plaintiff

        Counsel:               David Lourie, Esq.
                               189 Suprwink Ave
                               Cape Elizabeth, ME 04107

**Town of Naples**
**Defendant**

        Counsel:               Bryan Dench, Esq.
                               Norman Rattey, Esq.
                               95 Main St
                               Auburn, ME 04210
                                     AND
                               Benjamin Smith, Esq.
                               227 Water St
                               PO Box 1051
                               Augusta, ME 04332-1051

**Christopher Merrill & Estate of Jerry Merrill**
    3rd Party Defendant

        Counsel:               Nicholas H. Walsh, Esq.
                               120 Exchange St Suite 202
                               PO Box 7206
                               Portland, ME 04112-7206

**Catherine E. Bourbon, John Hudgins, Jennifer M. Landry, Bruce J. Landry**
    **Parties in Interest**

        Counsel:               Keith E. Glidden, Esq.
                               One Boston Place Suite 2330
                               Boston, MA 02108
                                     AND
                               Seth S, Coburn Esq.
                               One Portland Square
                               PO Box 586
                               Portland, ME 04112-0586

|                          |   |                          |
|--------------------------|---|--------------------------|
| AMERICAN HOLDINGS, INC.  | ) |                          |
|                          | ) |                          |
| Plaintiff,               | ) |                          |
|                          | ) |                          |
| v.                       | ) |                          |
|                          | ) | **ORDER ON PARTIES' CROSS-** |
| TOWN OF NAPLES, et al.   | ) | **MOTIONS FOR PARTIAL SUMMARY** |
|                          | ) | **JUDGMENT**             |
| Defendants.              | ) |                          |

## I. INTRODUCTION

Plaintiff, American Holdings, Inc. ("American Holdings") moves this court for partial summary judgment for a declaration that neither the Plaintiff's conversion to the condominium form of ownership nor the sale of said condominium units to Katherine Bourbon, Bruce J. Landry, Jennifer M. Landry, and John Hudgins (together "Parties-In-Interest") violated the Defendant Town of Naples's (the "Town" or "Defendant") minimum lot size and subdivision regulations. The Plaintiff further seeks judgment that the Town's mentioned ordinances violate 33 M.R.S.A § 1601-106, which prohibits discriminatory enforcement by the Town.

The Defendant Town opposes Plaintiff's motion and separately cross-moves this court as to the same issues. The Town seeks judgment as a matter of law that Plaintiff's conversion to and sale of condominium units violated the Town's zoning regulations including the Shoreland Zoning Ordinance, Site Plan Review Ordinance, Subdivision Ordinance, as well as Maine Law. Finally, the Town seeks an order directing the Plaintiff to repurchase the subject condominium units from the

1

Defendant Parties-in-Interest and to reintegrate the property and buildings as it existed prior to the formation of the condominium.

Defendant Parties-in-interest request that this court deny the Town's motion and move this court for summary judgment in their favor as to the Town's First Amended Counterclaim.

## II. MATERIAL FACTS

American Holdings is a corporation duly organized under the laws of the State of Maine. (Def.'s Addt'l S.M.F. ¶ 3.)[1] In 1999 American Holdings purchased Sunnyside Village located in the Town of Naples.[2] (Pl.'s S.M.F. ¶ 1; Def.'s Opp. S.M.F. ¶ 1.) At the time the Plaintiff purchased the property, the Village contained seven (7) structures including: a main building, a 2-car garage, a mobile home, and four cottages.[3] *Id.* In 2006, the Plaintiff began operating Sunnyside Village as a condominium.[4] (Pl.'s S.M.F. ¶ 2; Def.'s Opp. S.M.F. ¶ 2.) Prior to 2006, several changes and alterations were made to the main building and the garage structures at Sunnyside Village. (Def.'s Addt'l S.M.F. ¶ 17.) The Town argues that the changes constitute changes in use for which Town approval was required.[5] *Id.* Christopher Merrill, acting as an employee of American Holdings,

---

[1] American Holdings is owned by Barbara and Khristopher Klimek (collectively the "Klimeks"). (Def.'s Addt'l S.M.F. ¶ 4.) Barbara serves as the Vice President and Khristopher serves as the President of the corporation. *Id.* From the time the Klimeks took control until 2012, an individual by the name of Christopher Merrill was employed by American Holdings and subsequently acted as manager of Sunnyside Village. (Def.'s Addt'l S.M.F. ¶ 5.) Merrill also served as Secretary of the corporation and oversaw or personally handled the operation of Sunnyside Village from 1999 to 2012. (Pl.'s Rep. S.M.F. ¶ 6.)
[2] Edward and Thelma Torres owned and operated Sunnyside Village prior to 1999. (Def.'s Addt'l S.M.F. ¶ 31.)
[3] The previous owners had attempted to convert one of the commercial spaces on the property to a residential unit. However, the Board rejected the Torreses request to do so. (Def.'s Addt'l S.M.F. ¶ 11.)
[4] Defendants contends that filing of a declaration of condominiums had no effect because they were done fraudulently by a person lacking authority to bind the corporation. (Def.'s Opp. S.M.F. ¶ 3.)
[5] When American Holdings purchased Sunnyside Village, Wren Construction rented the first floor of the main building. The unit was a single unit with one large area. After Wren Construction vacated, American Holdings, converted the open space into efficiency-style apartments by adding a separating wall. (Def.'s Addt'l S.M.F. ¶¶ 18-21.) American Holdings then reconverted the space into its business office. (Def.'s Addt'l S.M.F. ¶¶ 23-24.) Further, the garage unit was transformed and modified to include a window, an interior wall structure, toilet, interior plumbing. The plumbing was not connected to a septic tank. (Def.'s Addt'l S.M.F ¶¶ 26-27.) The Town of Naples notes that no building permits were pulled or authorized for the work done to the garage. (Def.'s Addt'l S.M.F ¶ 27.) Plaintiff denies that any use on the property was

2

completed the work on the various units on the property.[6] (Def.'s Addt'l S.M.F. ¶ 28.) Khristopher Klimek claims to have been unaware of the changes made to the property until after Merrill was ultimately fired. (Rep. Addt'l S.M.F. ¶ 28.) The Town claims that it was unaware of any changes made to the property until 2013. (Def.'s Addt'l S.M.F. ¶ 32.) The Town further contends that neither prior nor current Code Enforcement Officers were aware of any alterations or changes in use to the property.[7] (Def.'s Addt'l S.M.F. ¶ 33.)

In 2005, Khristopher Klimek was diagnosed with cancer. (Def.'s Addt'l S.M.F. ¶ 35.) While Mr. Klimek was recovering from his illness, Christopher Merrill filed a declaration to establish Sunnyside Village Condominium Association.[8] (Def.'s Addt'l S.M.F. ¶ 36.) Merrill signed the document as "Vice President" of American Holdings. (Pl.'s Rep. Addt'l S.M.F. ¶ 40; Def.'s Addt'l S.M.F. ¶ 39.) Since the Declaration was filed, there have been three amendments to the document. Merrill signed two of the three amendments.

In 2012, American Holdings sold three (3) cottage condominium units to the Defendant Parties-in-Interest.[9] (Pl.'s S.M.F. ¶ 3; Def.'s Opp. S.M.F. ¶ 3.) Unit 4 was sold to John Hudgins. (Def.'s Addt'l S.M.F ¶ 47.) Thereafter, on August 16, 2012, Units 1 and 2 were sold to Katherine Bourbon. Bourbon conveyed Unit 2 to the Landrys on the same day. (Def.'s Addt'l S.M.F ¶ 56.)

---

commercial in nature. (Rep. Addt'l S.M.F. ¶ 14.) The Plaintiff contends that Khristopher Klimek had no involvement in the operation of Sunnyside Village during this period. (Rep. Addt'l S.M.F. ¶ 21).

[6] Christopher Merrill understood that work performed on building in the Town required approval by the Town. (Def.'s Addt'l S.M.F ¶¶ 30.)

[7] The Plaintiff denies that the Town was unaware of Plaintiffs projects and contends that Khristopher Klimek was under the impression that no permits were needed because the Code Enforcement Officer, Renee Carter had seen photographs of the work. Further, Plaintiff contends that John Thompson, the previous Code Enforcement Officer had authorized the construction, as there was no increase to the buildings footprint. (Pl.'s Rep. Addt'l S.M.F. ¶ 34.)

[8] Defendants contend that Mr. Klimek had previous discussions with Merrill regarding the possibility of establishing the condominium form of ownership and creating condos from the units within Sunnyside Village. (Def.'s Addt'l S.M.F ¶¶ 38-39.) However, the Plaintiff denies this assertion. (Rep. Addt'l S.M.F. ¶ 37.) On November 16, 2006, a Declaration of Condominiums was filed with the Cumberland County Registry of Deeds.

[9] Defendants deny that the cottages were seasonal as no such restrictions were mentioned when the property was sold to the Defendants. (Def.'s Opp. S.M.F. ¶ 3.)

3

In October of 2012, Renee Carter became the Code Enforcement Officer for the Town of Naples. (Def.'s Addt'l S.M.F ¶ 59.) Believing that Mr. Klimek had a valid permit from the previous Code Enforcement Officer, Ms. Carter did not issue a "stop work" order for the ongoing projects. *Id.* However, in June 2013, Ms. Carter noticed a contractor's vehicle at the site and inquired into the new projects. (Def.'s Addt'l S.M.F ¶ 65.) The contractor informed Ms. Carter that a kitchen was being added to the garage unit. (Def.'s Addt'l S.M.F ¶¶ 67-68.) At that time Ms. Carter stopped the projects.

In 2014, the Town asserted violations of the Town's subdivision and minimum lot size ordinances. The Code Enforcement Officer demanded that American Holdings repurchase the condominium units and restore the property to its pre-2006 use. (Pl.'s S.M.F. ¶ 4; Def.'s Opp. S.M.F. ¶ 4.) The Town has adopted separate Minimum Lot Size, Shoreland Zoning, Land Use, and Zoning ordinances. (Pl.'s S.M.F. ¶ 5; Def.'s Opp. S.M.F. ¶ 5.) Plaintiff contends that there is no restriction in the various zoning ordinances prohibiting it from converting property to the condominium form of ownership. *Id.* The Defendants, on the other hand, believe the facts demonstrate that American Holdings' actions violated the Town's Shoreland Zoning Ordinance, Site Plan Review Ordinance, Subdivision Ordinance, and Maine Law. (Def.'s Opp. S.M.F. ¶ 4.) On May 14, 2014, American Holdings filed a third amendment to the condominium declaration. (Def.'s Addt'l S.M.F ¶ 87.) In said document American Holdings reduced the total number of condominium units to seven consisting of four cottages, a main building, a mobile home, and a garage structure. (Def.'s Addt'l S.M.F. ¶ 89.)

The Town of Naples has a definitional Ordinance.[10] (Pl.'s S.M.F. ¶ 6; Def.'s Opp. S.M.F. ¶ 6.) The Plaintiff contends that Sunnyside Village today contains an identical mix of dwellings

---

[10] The Town believes that the appropriate authority for determination in this case is a 1990 and a 1992 planning board decision as well as a more recent 2014 decision where the Planning Board found that conversion of property into a condominium form of ownership constitutes an illegal subdivision and requires

4

recognized by the Ordinances of the Town of Naples as existed when the property was purchased by American Holding in 1999. However, the Town denies this assertion. The Town contends that previous non-conforming uses for the garage on the property do not allow for residential uses.[11] (Def.'s Opp. S.M.F. ¶ 7.)

## III. STANDARD OF REVIEW

M.R. Civ. P. 56(c) instructs that summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." To survive a motion for summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. *Rodrigue v. Rodrigue,* 1997 ME 99, ¶ 8, 694 A.2d 924. For purposes of summary judgment, "[a] material fact is one that can affect the outcome of the suit." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573 (citing *Kenny v. Dep't of Human Services,* 1999 ME 158, ¶ 3, 740 A.2d 560); *see also McIlroy v. Gibson's Apple Orchard,* 2012 ME 59, ¶ 7, 43 A.3d 948. A genuine issue exists when sufficient evidence supports a factual contest to require a fact-finder to choose between competing versions of the truth at trial. *See Prescott v. Tax Assessor,* 1998 ME 250, ¶ 5, 721 A.2d 169 (citing *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990)).

A party wishing to avoid summary judgment must present a *prima facie* case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Servs.,* 2005 ME 29, ¶ 9, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter,* 2001 ME 158, ¶ 7, 784 A.2d 18. When the court rules on a motion

approval under the Town Ordinances due to specific minimum lot size and shoreland zoning issues. (Def.'s Opp. S.M.F. ¶ 6.)
[11] The Defendant contends that the garage has been almost completely converted into residential use and now has a kitchen, bathroom, and a bedroom. (Def.'s Opp. S.M.F. ¶ 7.)

5

for summary judgment, "'[it] is to consider *only* the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements.'" *Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 16, 711 A.2d 1306 (quoting *Gerrity Co. v. Lake Arrowhead Corp.*, 609 A.2d 293 (Me. 1992)). The court will view the evidence in light most favorable to the non-moving party. *See, Steeves v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 1998 ME 210, ¶ 11, 718 A.2d 186.

## IV. DISCUSSION

### A. The Declaration of Condominium and Subsequent Amendments Are Valid

On November 16, 2006, Christopher Merrill, the acting Secretary of American Holdings, filed a Declaration of Condominium (the "Declaration") and established the "Sunnyside Village Condominium Association." Mr. Merrill signed the Declaration as "Vice President" of the corporation. Both Khristopher and Barara Klimek indicated in their depositions that the Declaration and subsequent amendments were filed without authorization of American Holdings and were fraudulent.[12] (Def.'s Addt'l S.M.F. ¶¶ 43-44.) The Defendants argue that Merrill lacked authority to bind American Holdings and therefore the Declaration is invalid. (Def.'s Mot. 10.) Under this argument, the Sunnyside Condominium was never established and the property remains as it was in 2006. (Def.'s Mot. 11.)

#### 1. *Agency and Authority in General*

"Whether an agency relationship exists is a question of fact." *QAD Investors, Inc. v. Kelly*, 2001 ME 116, ¶ 18, 776 A.2d 1244 (citing *Williams v. Inverness Corp.*, 664 A.2d 1244, 1246-47 (Me. 1995); *Clapperton v. United States Fidelity & Guar. Co.*, 148 Me. 257, 266, 92 A.2d 336, 341 (1952)). Agency is the fiduciary relationship "which results from the manifestation of consent by

---

[12] At the time the Declaration was filed Khristopher Klimek was recovering from cancer and was incapacitated. (Def.'s Addt'l S.M.F. ¶¶ 34-35.) While the Plaintiff questions the materiality of this fact, the court finds that Mr. Klimeks capacity is material in determining whether the corporation was appropriately bound to the Declaration of Condominium.

6

one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981 (Me. 1982) (citing *Defosses v. Notis*, 333 A.2d 83, 86 (Me. 1975)); *see also J&E Air, Inc v. State Tax Assessor*, 773 A.2d 452, 456 (Me. 2001). In this case, it is undisputed that Christopher Merrill was employed by, and held himself out as an agent for American Holdings at the time he entered into the Declaration of Condominium. (Def.'s Addt'l. S.M.F. ¶ 5; Pl.'s Rep. S.M.F ¶ 5.)

The scope of an agent's authority to act on behalf of the principal or corporation is determined by the intention of the principal or by the manifestation of that intention to the agent. Express authority is "that authority which is directly granted to or conferred upon the agent . . . in express terms by the principal . . . ." *Stevens v. Frost*, 140 Me. 1, 7, 32 A.2d 164 (1943). It is undisputed that there was no express authority in this case granting Merrill the authority to enter into a binding declaration of condominium. Both Khristoper and Barbara Klimek have indicated that Merrill's actions were unauthorized and fraudulent. (Def.'s Addt'l. S.M.F. ¶ 43; Pl.'s Rep. S.M.F. ¶ 43.) Thus, Merrill acted outside the scope of any actual express authority.

### 2. *Apparent Authority*

"Apparent authority is authority which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing. Apparent authority exists only when the *conduct of the principal* leads a third party to believe that a given party is [its] agent."[13] *QAD Investors, Inc. v. Kelly*, 2001 ME 116, ¶ 19, 776 A.2d 1244; *see also* Restatement (Second) of Agency § 8 (1958). "[T]he third person must believe the agent to be authorized."

---

[13] The *Restatement (Second) of the Law of Agency* § 267 (1958) provides:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care and skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*See also Williams v. Inverness Corp.*, 664 A.2d 1244, 1246 (Me. 1995)

7

Restatement (Second) of Agency § 8 cmt. C; *see also* Restatement (Third) of Agency § 2.03 cmt. c ("Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and traceable to a manifestation of the principal.")

In this case, a third party could reasonably believe that Merrill was acting with the requisite authority in his capacity as a corporate officer of American Holdings and as manager of Sunnyside Village.[14] However, the court need not draw a legal conclusion as to this issue. The court finds based on undisputed facts that even if Christopher Merrill lacked apparent authority, the Klimeks' subsequent conduct ratified the declaration of condominium and accompanying documents, including the first and second amendments executed by Merrill.

### 3. *Ratification*

An agent can bind the principal only if all terms and conditions have been authorized. *Hendrickson v. Wright*, 285 A.2d 839, 842 (Me. 1971) (citing *Swift v. Erwin*, 104 Ark. 459, 148 S.W. 267 (1912)). If the principal is to be bound by *unauthorized* acts of an agent the principal must know all of facts regarding said unauthorized act.[15] *Id.* (citing *Gould v. Maine Farmers Mutual Fire Ins. Co.*, 114 Me. 416, 96 A. 732 (1916)). In other words:

---

[14] *See Steelstone Indus., Inc. v. N. Ridge Ltd. P'ship*, 1999 ME 132, ¶ 2, 735 A.2d 980. In *Steelstone*, The Law Court determined that the principal negligently held its sub-contractor out as its agent. The court reasoned that it could infer that the principal authorized the agent to contact prospective subcontractors. Similarly, in this case, Merrill managed the day-to-day operations of Sunnyside Village. It is undisputed here that the Klimeks were aware of Merrill's dealings and work with the property as they hired and continued to employ him.

[15] According to the Restatement (Second) of Agency:

Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him . . . . Affirmance is either (a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or (b) conduct by him justifiable only if there were such an election. An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it.

8

> When the principal receives the benefits of an unauthorized act of his agent, when he is apprised of the facts, if he has suffered no prejudice and can make restitution, he must elect whether to ratify or disaffirm and if he decides not to ratify he must return the fruits of the unauthorized act within a reasonable time.

*QAD Investors, Inc. v. Kelly*, 2001 ME 116, ¶ 21, 776 A.2d 1244 (citing *Perkins v. Philbrick*, 443 A.2d 73, 75 (Me. 1982)). In this case, the Klimeks continued to operate Sunnyside Village under the condominium form of ownership after Merrill entered into the Declaration in 2006. American Holdings actively advertised the condominium units and Khristopher Klimek willingly signed the Third Amendment to the Declaration. At the time he entered into said Amendment it is undisputed that he was well aware of the facts concerning Merrill's fraudulent signature as Vice President of the corporation and the ramifications of the original Declaration filed in 2006.[16]

Thus, because it is undisputed both that American Holdings continued to operate Sunnyside Village as a condominium after Christopher Merrill's misrepresentation, and that the corporation did not repudiate his actions, the Declaration of Condominium was ratified and accepted by American Holdings notwithstanding the fraudulent actions of Merrill.

B. Change in Use

The Town contends that the Plaintiff's change to the condominium form of ownership discontinued the prior "commercial uses" and changed the character of the residential uses. (Def.'s Opp. Mot. 12.) At the time the Plaintiff purchased the subject property in 1999, Sunnyside Village operated legally existing non-conforming residential and commercial uses. The property consisted of:

• One year-round 70' home including a two-car garage;

---

*QAD Investors, Inc. v. Kelly*, 2001 ME 116, ¶ 22, 776 A.2d 1244, 1250 (internal citations omitted).

[16] In *Perkins v. Philbrick*, the Law Court denied that ratification had taken place where an individual was unaware his lawyer had forged his name on settlement documents. The Court noted "[f]or ratification of an agent's actions to occur, it is necessary that all material facts be known by the principal." 443 A.2d 73, 75 (Me. 1982) (citing *Hendrickson v. Wright*, Me., 285 A.2d 839 (1971)). However, in this case, it is undisputed that the Klimek's affirmatively elected to continue with the condominium form of ownership after they became aware of his fraudulent conduct.

9

- Four seasonal camps with a total of seven (7) bedrooms;
- One year-round trailer with two (2) bedrooms; and
- One building containing two apartments (4 bedrooms total) and 3 commercial units.

(Def.'s Addt'l S.M.F. ¶¶ 10-12.) Upon acquisition of the property, the Plaintiff continued to operate in accordance with the property's pre-existing uses. The operation consisted of short-term and seasonal cottage rentals as well as a commercial tenancy on the first floor of the main building. The space was leased to Wren Construction.[17] (Def.'s Addt'l S.M.F. ¶ 18)

### 1. *The Plaintiff's Change to the Condominium Form of Ownership Does Not Constitute an Expansion or Intensification of Use*

In Maine, "a mere change in ownerships does not constitute a change in use . . . . In order to constitute a change in use, an alteration in the character and quality of the use will suffice; an increase in the intensity or volume will not suffice." *Wachusett Properties Inc. v. Town of China* 2008 WL 7055411 (citing *Keith v. Saco River Corridor Comm'n,* 464 A.2d 150, 155-56 (Me. 1983)). Here, the undisputed facts indicate that no additional residential or dwelling units were created. Rather, the Declaration of Condominium only changed the ownership of the property into a multi-owner structure with divided interest in the individual units.

The Town expresses concern that the seasonal use of the units may develop into year-round use by owners. The Town contends that by allowing previously seasonal units to operate on a year-round basis there will be a greater adverse impact on the subsurface sewerage system and an increase in septic waste.[18] (Def.'s Opp. Mot. 14.) In support, the Town cites *Oman v. Town of Lincolnville.* In *Oman* the plaintiff proposed to sell pre-existing seasonal cabins and a house as

---

[17] The parties disagree as to whether the space leased to Wren Construction constituted a "commercial" or "residential" use. The court addresses this question below.

[18] Pursuant to Section 12(D)(3) of the Town's Shoreland Ordinance:

An existing non-conforming use may be changed to another non-conforming use provided that the proposed use has no greater adverse impact on the subject and adjacent properties and resources, including water dependent uses in the CFMA district, than the former use, as determined by the Code Enforcement Officer. The determination of no greater adverse impact shall be made according to criteria listed in 12(C)(5) above.

10

individual condominium units. The Law Court upheld the decision of the Zoning Board of Appeals that the plaintiff's proposal constituted a change in use and, as a result, required compliance with the Town's minimum lot requirement. 567 A.2d 1347, 1348 (Me. 1990). However, *Oman* is easily distinguishable. Central to the Law Court's decision was the definition of the term "dwelling unit" in the Town's ordinance. The ordinance in *Oman* did not include "seasonal property" in its definition. *Id.* 1348. The Court determined that "rental cabins serving [a] transient population were not 'dwelling units' within the meaning of the zoning ordinance and, accordingly, [the] conversion to condominiums would involve creation of nine individual dwelling units out of former single use, each of which would be required to comply with minimum lot requirement." *Id.*

The Town of Naples, on the other hand, defines "dwelling unit" in its Definitional Ordinance as: "a room or group of rooms designed and equipped exclusively for use as permanent, *seasonal* or temporary living quarters for only one family, including provisions for living, cooking and eating." *See* Town of Naples Definitional Ordinance (emphasis added). Thus, the Town cannot establish a change in use using the same rationale provided by the Law Court in *Oman*. Rather, the court finds that this case is more in line with *Keith v. Saco River Corridor Comm'n*, 464 A.2d 150, 154 (Me. 1983).

In *Keith*, the owner of a grandfathered parcel proposed to sell and divide the land into four separate lots.[19] *Id.* at 152. The land was traditionally occupied by tenants. Although the property was lawfully non-conforming, the Town contended that the owner's division and sale proposal would destroy its grandfathered status. *Id.* at 153. The Law Court found that "the proposed shift from tenant-occupation to owner-occupation of the delineated lots did not constitute and extension,

---

[19] "The plot contained a duplex residence, and two detached single-family houses with garage, each dwelling being served by its own utility and sewage disposal system." *Keith*, 464 A.2d at 152.

11

expansion or enlargement of the existing nonconforming use so as to defeat the grandfathered status of the property." *Id.* at 152. The Court noted:

> The central point . . . when dealing with nonconforming buildings or uses is, that it is the building or the land that is 'grandfathered' and not the owner. . . . Once a nonconforming use or building is shown to exist, neither is affected by the user's title or possessory rights in relation to the owner of the land.

*Id.* at 154. The Law Court went on to established the following test to determine whether the use of a particular property fits within the grandfathered non-conforming use:

> (1) whether the use reflects the "nature and purpose" of the use prevailing when the zoning legislation took effect; (2) whether there is created a use different in quality or character, as well as in degree, from the original use, or (3) whether the current use is different in kind in its effect on the neighborhood

*Id.* at 155.

In this case, under the Plaintiff's condominium proposal, the property will continue to be used seasonally, no expansion of existing buildings or units will or has occurred. Further, even if the condominium owners use the units year-round as opposed to seasonally, the Law Court has held "where the original nature and purpose of the enterprise remain the same, and the nonconforming use is not changed in character, mere increase in the amount or intensity of the nonconforming use within the same area does not constitute an improper expansion or enlargement of such nonconforming use. *Frost v. Lucey*, 231 A.2d 441, 448 (Me. 1967).

### 2. *Residential and Rental Property Operations Are Not "Commercial Uses" Under Both State Law and the Towns' Definitional Ordinance.*

The Law Court has held that rental property is more appropriately deemed a "residential" as opposed to a "commercial" use. For example, in *Silsby v. Belch*, the court found that:

> A person residing in an apartment building is not, by virtue of residing in an apartment engaged in commerce or working 'having profit as [her] primary aim.' The fact that a resident pays some manner of rent to a building owner, creating a profit in some instances and in some instances not, does not in itself render the residential building a commercial enterprise. The property, like an owner-occupied, single-family residence beside it, remains

12

a place for people to live. Its character is fundamentally different from a department store or service station.

2008 ME 104, ¶ 13, 952 A.2d 218. In accordance with this policy, the Town's Definitional Ordinance defines "Commercial Use" as "[t]he use of lands, buildings or structures, other than a 'home occupation' . . . the intent and result of which activity is the production of income from the buying and selling of goods and/or services, *exclusive of rental of residential buildings and/or dwelling units*."[20] The Ordinance goes on to define "residential building" as "[s]ingle family dwellings, duplexes, cluster, apartments and *condominiums*." Town of Naples Definitional Ordinance (emphasis added).

The Town contends that the Definitional Ordinance does not apply to this case because the Plaintiff's property was grandfathered under the Town's previously existing ordinances as a non-conforming commercial use. This argument is not compelling. The interpretation of a zoning ordinance provision is a question of law. *See Huddleson v. Inhabitants of Town of Eliot*, 2004 WL 1598724, at *2 (Me. Super. July 6, 2004). While the property may have been non-conforming prior to the 2002 implementation of the Town's Definitional Ordinance, the plain language of the Definitional Ordinance reveals that rental property and residential buildings are specifically excluded from the Town's definition of "commercial use." Thus, the Town's argument that the Plaintiff has converted commercially run cottages and an office space into a "residential use" is without merit. Under the Town's own Definitional Ordinance, the Plaintiff's rental operation was not a commercial use.

### 3. *Commercial Uses Employed By American Holdings*

As mentioned above, the operation of rental property is a non-commercial use. However, Sunnyside Village has operated as a mixed-use property. The Plaintiff argues that the space previously rented to Wren Construction was a non-commercial use. To support this assertion, the

---

[20] The Town's Definitional Ordinance was adopted June 11, 2002 and amended on June 24, 2009.

13

Plaintiff contends that Wren Construction did not engage in "the production of income from the buying and selling of goods and/or services" as required under the Town's definition of "commercial use." The Plaintiff's reading of the ordinance is too narrow. Under the Plaintiff's interpretation, only retail/service establishments would qualify as "commercial." Wren Construction utilized the office space to further its business, whether through private drafting or through the preparation of the services that it rendered. Thus, the court finds based on undisputed facts that Wren Construction's leased unit on the Sunnyside Village property was a commercial use.

Today, the Plaintiff occupies the unit previously occupied by Wren Construction. The court finds based on undisputed facts that the Plaintiff also occupies the unit in a commercial capacity. The Definitional Ordinance applies to the use of the property and not the type of business operated by the tenant. In this case, it is undisputed that the Plaintiffs utilize the office to maintain and manage the condominium property and to produce income for the business. Thus, the court finds that there has been no change in use as the office portion of Sunnyside Village has continued to operate as a commercial entity and in conformance with its grandfathered use.

Because the court finds, as a matter of law, that there has been no change in use, the Plaintiff is not subject to the minimum lost size requirements under the Town's Shoreland Zoning Ordinance or approval under the Town's Site Plan Review Ordinance.

C. Sunnyside Condominium is Not an Unlawful Subdivision

The Town contends that the creation of Sunnyside Condominiums constituted an illegal subdivision by establishing new residential dwelling units on the Sunnyside Village property with separate ownership interests. Pursuant to 30-A M.R.S.A § 4401(4), "Subdivision" means:

[T]he division of a tract or parcel of land into 3 or more lots within any 5-year period that begins on or after September 23, 1971. This definition applies whether the division is accomplished by sale, lease, development, buildings or otherwise. The term "subdivision" also includes the division of a new structure or structures on a tract or parcel of land into 3 or more dwelling units within a 5-year period, the construction or placement of 3 or more dwelling units on a single tract or parcel of land and the division of an existing structure or

14

structures previously used for commercial or industrial use into 3 or more dwelling units within a 5-year period.

The first sentence of the definition encompasses "land subdivisions" and the third sentence encompasses "dwelling unit" subdivisions.

### 1. Land Subdivision

In 1998, prior to the amendment of the Subdivision Act encompassing dwelling unit subdivisions, the Law Court decided *Town of York v. Craigin.* In *Craigin,* the Law Court held:

> The division of a structure, as distinguished from the division of a parcel of land into lots, does not result in the creation of a subdivision under [the Subdivision Act]. The term 'land' in its broadest sense may include interests in a structure, but in defining a subdivision as involving the creation of 'lots' from a 'parcel of land', the statute refers unmistakably to an interest on the ground.

541 A.2d 932, 934 (Me. 1988). Thus, after *Craigin* and the subsequent amendment to the Subdivision Act, it is clear that unless the division of an existing structure qualifies as a dwelling unit subdivision under the Subdivision Act, there is no subdivision.

In this case, there is no evidence on the record that American Holdings divided the subject property into "[three] or more lots within any five-year period . . . by sale, lease, development, buildings or otherwise." Rather, the condominium units were created within the interior of the existing buildings. The only legal status of the lot that changed was the ownership of the interior units. *See supra* Section C. 1. Thus, the court next addresses whether the change in ownership constitutes a dwelling unit subdivision.

15

## 2. *Dwelling Unit Subdivisions*[21]

As mentioned above, a "dwelling unit" subdivision occurs under three specific circumstances. First, when a new structure located on a tract or parcel of land is divided into three or more dwelling units within a five-year period; Second, when three or more dwelling units are constructed or placed on a single tract or parcel of land; and Third, when a structure previously used for commercial and or industrial use is divided into three or more dwelling units within a five-year period. 30-A M.R.S.A § 4401(4). The court finds based on undisputed record facts that no dwelling unit subdivision has been created by Plaintiff's conversion to the condominium form of ownership.

The court finds based on undisputed facts that the Plaintiff did not divide any new structure into three or more dwelling units. *Id.* The statute defines "new structure" as "any structure for which construction begins on or after September 23, 1988." *Id.* In this case, the divided structures each predate 1988.[22] The court further finds based on undisputed facts that the Plaintiff did not construct or place three or more units on any parcel or tract of land. In fact, the units in question predate the declaration of condominium. Finally, there is no evidence on the record that the Plaintiff converted a structure previously used for commercial or industrial use into three or more dwelling units. In *Wachusett Properties v. Town of China*, the plaintiff owned twenty-six (26) individual cabins and a lodge. Plaintiff converted the interiors of the cabins and established

---

[21] The Town of Naples employs a modified version of the definition of "subdivision" which is silent as to "dwelling unit" subdivisions. The Plaintiff contends that the absence of dwelling unit subdivision precludes the Town from seeking enforcement under State law. However, the court disagrees. While 30-A M.R.S.A § 3001(2) indicates that: "there is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority," in this case, the Town's ordinance is silent as to "dwelling unit" subdivisions, therefore, Maine State law must control.

[22] This analysis excludes the garage.

16

individual condominium units to convey to individual owners.[23] The Town argued that the condominium was a "division of an existing structure or structures previously used for commercial or industrial use into 3 or more dwelling units within a 5-year period." 30-A M.R.S.A. § 440(4); *Wachusett Properties Inc. v. Town of China*, 2008 WL 7055411. The superior court determined that:

> By selling the interior of the cabins to new owners, the proposed condominium plan would result in the "splitting off of an interest" in the cabins, and the creation, by means of sale, of an interest in another. The sale of the cabins under the proposed plan constitutes a "division of an existing structure or structures."

*Id.* The court then analyzed the commercial use employed on the premises. The lodge was previously used for the sale of meals and would continue to be used in the same manner under the condominium proposal. The Towns definitional ordinance, like the Town of Naples, excluded the rental of residential buildings or dwelling units from the definition of commercial use. The court determined that there was no subdivision because the structures were not previously used for commercial use.

In this case, residential rental units are similarly excluded from the Town's definition of "commercial use." Further, it is the court's understanding, based on undisputed facts that the pre-existing commercial space in the "main building" will continue as a business office for operation of the condominium. In line with the holding of *Wachusetts Properties*, the sale of the interior Sunnyside Condominium units do not constitute a dwelling unit subdivision as defined by State law. Thus, the court grants Plaintiff's motion as to this issue. The court further grants Defendants' Parties-in-Interests' motion concerning the same. Defendant's cross-motion is denied.

---

[23] The exterior dimensions of the buildings and structures did not change and no new structures or units were created. The lot size remained the same. *Wachusett Properties Inc. v. Town of China*, No. CV-07-329, 2008 WL 7055411 (Me. Super. Sept. 9, 2008).

17

## D. The Court Finds No Violation of 33 M.R.S.A. Section 1601-106

The Plaintiff contends that the Town's Minimum Lot Size Ordinance violates 33 M.R.S.A. §1601-106, which states:

> A zoning, subdivision, building code or other real estate use law, ordinance or regulation may not prohibit the condominium form of ownership. Otherwise, no provision of this Act invalidates or modifies any provision of any zoning, subdivision, building code or other real estate use law, ordinance or regulation. No county, municipality, village corporation or other political subdivision, whether or not acting under the municipal home rule powers provided for under the Constitution of Maine, Article VIII, Part Second or Title 30-A, chapter 111, and section 3001, or any other authority from time to time, may adopt or enforce any law, ordinance, rule, regulation or policy which conflicts with the provisions of this Act.

While the Plaintiff has demonstrated that the Town enforced it Minimum Lot Size Ordinance after Plaintiff filed the Declaration of condominium, the Plaintiff has failed to establish a prima facie case on this record that said enforcement was discriminatory. For this reason, the court denies Plaintiff's Motion for Summary Judgment as to this claim.

## V. CONCLUSION

Based on the foregoing, the court shall:

GRANT Plaintiff's Motion for Partial Summary Judgment finding the Declaration of Condominium to be valid. Further, the court finds that neither the Plaintiff's conversion to the condominium form of ownership nor the sale of individual condominium units violated the Town's ordinances as asserted in the NOV.

DENY Plaintiff's Motion as it relates to 33 MRSA §1601-106.

DENY Defendant's Motion for Partial Summary Judgment seeking an order directing the Plaintiff to repurchase the condominium units from the Defendant Parties-in-Interest and to reintegrate the property and buildings as it existed prior to the formation of the condominium.

GRANT Defendant Parties-In-Interest request for summary judgment in their favor as to the Town's First Amended Counterclaim.

18

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

Dated: March 23, 2015

Justice, Business & Consumer Court

American Holdings, Inc. v. Town of Naples
American Holdings, Inc., Kristopher Klimek and Barbara Klimek v.
Christopher Merrill & Estate of Jerry Merrill, and Katherine E. Bourbon, et als.
BCD-CV-14-43

**American Holdings, Inc.**
    **Plaintiff / 3rd Party Plaintiff**

        Counsel:             David Lourie, Esq.
                                  189 Suprwink Ave
                                  Cape Elizabeth, ME 04107

**Kristopher Klimek and Barbara Klimek**
    **Intervenor / 3rd Party Plaintiff**

        Counsel:             David Lourie, Esq.
                                  189 Suprwink Ave
                                  Cape Elizabeth, ME 04107

**Town of Naples**
**Defendant**

        Counsel:             Bryan Dench, Esq.
                                  Norman Rattey, Esq.
                                  95 Main St
                                  Auburn, ME 04210
                                          AND
                                  Benjamin Smith, Esq.
                                  227 Water St
                                  PO Box 1051
                                  Augusta, ME 04332-1051

**Christopher Merrill & Estate of Jerry Merrill**
    **3rd Party Defendant**

        Counsel:             Nicholas H. Walsh, Esq.
                                  120 Exchange St Suite 202
                                  PO Box 7206
                                  Portland, ME 04112-7206

**Catherine E. Bourbon, John Hudgins, Jennifer M. Landry, Bruce J. Landry**
    **Parties in Interest**

        Counsel:             Keith E. Glidden, Esq.
                                  One Boston Place Suite 2330
                                  Boston, MA 02108
                                          AND
                                  Seth S, Coburn Esq.
                                  One Portland Square
                                  PO Box 586
                                  Portland, ME 04112-0586